1805.

TUTTLE
*v.*
RUSSELL.

## Gardner *v.* Preston.

2d 205
69 729

In the Court below,

WILLIAM GARDNER, *Plaintiff* ; NATHAN PRESTON, DAVID TALMAN, GARWOOD H. CUNNINGHAM, and GARRY BACON, *Defendants.*

THIS was an action on the case, founded on a fraudulent combination. The declaration stated, that on the 20th of March, 1803, the defendants, then all residing in this state, combined and conspired to defraud such merchants and traders in Boston, as they might be able to deceive, by their arts and practices. The plaintiff was, at that time, a Boston merchant. The particular scheme agreed upon, by the defendants, was, that *Talman* and *Bacon* should immediately go to Boston, and that *Talman* should give out to the merchants there, that he wished to purchase a great quantity of goods, and that he was a man of large property, and safely to be trusted. To make this representation believed, he was also to give out, that he expected " *Judge Preston*," (meaning one of the defendants) to be shortly there, with a large sum

In an action against A B. and C. for a conspiracy among themselves, to defraud such merchants and traders as they should be able to impose upon, by representing A. who was a bankrupt, as a man of large property, and safely to be trusted ; evidence

that the defendants made such representations to other persons than the plaintiff, in consequence of which, such persons, without the request of the defendants, recommended A. to the plaintiff, whereby the plaintiff was induced to give him credit, is admissible.

of money for him.  *Talman* and *Bacon* accordingly went to Boston, and made these representations to several merchants there, and, among others, to *Peabody & Rogers*. *Preston* and *Cunningham* followed soon afterwards, and carried and delivered to *Talman*, two thousand dollars, for the purpose of making it believed, that he was a man of large property, a man of honour and punctuality, and safely to be trusted, and to enable him to purchase a large quantity of goods there, by making ready payment in part, and for the residue, to a great value, to obtain a credit.  *Bacon* was, in fact, a regularly educated merchant, and known in Boston to be a man of property.  To carry on the deception, he went round with *Talman* to the stores, and assisted him in selecting and assorting the goods.  The declaration then averred, that " the defendants, with the same fraudulent " intent, did there, at said Boston, jointly, and each of them, " to the said *Peabody & Rogers*, and to very many of the " other good people of said Boston, so that it might be there " generally heard and believed, and to the plaintiff, give " out, declare, and represent, that the said *Talman* was a " man of large property, of fair character, and safely to be " trusted, and did so declare and represent to the said *Peabody & Rogers* particularly, to induce them to recommend " him the said *Talman*, to such merchants in said Boston, as " might have, and be induced to sell, on the terms aforesaid, " such goods as the said *Talman* might choose to purchase. " And the said *Peabody & Rogers*, confiding in such repre- " sentations, did accordingly, and at the instance of the de- " fendants, represent and recommend the said *Talman* to the " plaintiff, as a man of large property, fair character, and " safely to be trusted."  The plaintiff thereupon sold *Talman* goods to a considerable amount, for part of which *Talman* paid in cash, and gave his note for the residue, which had never been paid.  The declaration stated *Talman* to have been, from the beginning, a bankrupt, a swindler, and a common cheat.

The defendants pleaded severally, *Not guilty*.  On the

trial to the jury, the plaintiff offered several depositions to prove, that the defendants " did, in pursuance of said con- " spiracy and combination, and for the purposes recited in " the declaration, recommend said *Talman* to said *Peabody* " *& Rogers*, and to others in said Boston, as a man of large " property, and safely to be trusted, and with intent that said " *Peabody & Rogers* should recommend him to the plaintiff, " as a man of large property, and safely to be trusted ;" and that " said *Peabody & Rogers* were induced, from the " recommendations of said *Preston* and *Bacon*, to recom- " mend said *Talman* to the plaintiff, as alleged in the decla- " ration, and did, in fact, so recommend said *Talman* to " them, to be one of the first merchants in Connecticut, " and safely to be trusted." To the admission of this evi- dence the defendants objected, unless the plaintiff could prove, that *Preston* and *Bacon requested Peabody & Rogers* to recommend *Talman* to the plaintiff. The plaintiff in- sisted, that his depositions ought to be admitted, on the ground—first, that it was pertinent to the issue joined in the case, and proved the facts alleged in the declaration ; secondly, as evidence to the jury of the *conspiracy* and *combination* charged in the declaration ; and thirdly, as evidence to the jury, that *Preston* and *Bacon intended*, that *Peabody & Rogers* should recommend *Talman* to the plain- tiff as a man of property. The Court rejected the testi- mony, on the ground taken by the defendants. A verdict was found against *Talman*, but in favour of the rest of the defendants ; and the plaintiff filed his bill of exceptions.

*Smith*, (of New-Haven,) and *Bristol*, for the plaintiff, con- tended for the admissibility of the evidence, on the same grounds on which they had urged its admission on the trial.

*Daggett*, and *Smith*, (of Woodbury,) for the defendants.

BY THE COURT. The general question is, Whether the testimony offered was admissible, to prove the combination

and fraud, for the redress of which the plaintiff instituted his action ?

It is for the Court to decide, Whether the evidence conduced *at all* to the proof of the fact, which was to be ascertained. But this point having been determined, the question *how far* it conduced to prove the fact, is exclusively within the cognizance of the jury. (*a*)

Direct evidence, for the most part, is neither to be required nor expected ; and this remark is of peculiar importance, in reference to the proof of fraud. " The nature of " the thing itself, which is generally carried on in a secret " and clandestine manner, does not admit of [positive] evi- " dence ; and therefore, if no proof but that of actual fraud " were allowed in such cases, much mischief and villainy " would ensue, and pass with impunity. Circumstantial " evidence is all that can be expected, and indeed, all that " is necessary, to substantiate such a charge." (*b*)

Nor is it requisite, that the circumstantial evidence should have a direct relation to the immediate subject of inquiry ; much less, that the inference drawn from the circumstances proved, should be absolutely certain, or necessary. It is sufficient, if the evidence be such, as to produce a fair and reasonable presumption of the facts in issue ; and if it has that tendency, it ought to be received, and left to the consideration of the jury, to whom alone it belongs to determine upon the precise force and effect of the circumstances proved.

Upon this principle, evidence of irregular and suspicious transactions and circumstances, relating to bills drawn payable to fictitious payees, has been admitted, though none of

(*a*) 2 *H. Bla.* 205, *Gibson*, &c. v. *Hunter.*
(*b*) *Park on Insurance* 214.

those transactions and circumstances *had any apparent rela-
tion to the bill then in question.* (c)

A prominent fact, averred by the plaintiff, was, the combi-
nation of the defendants to defraud ; and in proof of this,
the testimony, which the Court below rejected, was princi-
pally offered.   In the case of *King* v. *Parsons et al.* (d) which
was an information for a conspiracy, it was adjudged, " that
" there was no occasion to prove the actual fact of con-
" spiring, but that it might be collected from collateral cir-
" cumstances."

A combination or conspiracy may be proved, by evincing
a concurrent knowledge and approbation in the persons
conspiring, of each others acts ; and it is most usually done,
by proof of the separate acts of several persons, concentrating
in the same purpose or particular object.   The greater the
secrecy that is observed, relative to the object of such con-
currence, and the more apparent the similarity of the means
employed to effect it, the stronger is the evidence of con-
spiracy. (e)   In the case of the *King* v. *William Stone,* (f) it
was said by LAWRENCE, J. " that in *Tooke's* case, he had al-
" luded to the cases of Lord *Stafford* and Lord *Lovatt*, to
" shew, that in order to prove a conspiracy, the acts of the
" different conspirators were admissible, though acts to
" which the prisoners were no party."

In *Beal* v. *Thatcher*, (g) a very recent case, the principle
just mentioned is recognized and applied.   The plaintiff
brought an action on the case against the defendant, for his
having given a false character of one *Johnston as to his sol-
vency,* by reason of which the plaintiff had trusted him with
goods, which had not been paid for.   The plaintiff's counsel

(c) 2 *H. Bla.* 288, *Gibson* v. *Hunter.*
(d) 1 *Bla. Rep.* 392.
(e) 1 *East's Pleas of the Crown, p.* 97.
(f) 6 *Term. Rep.* 527.
(g) 3 *'Esp. Rep.* 194.

called a witness to prove, that the defendant had recommended *Johnston* to him, (the witness,) and represented him as a man entitled to credit, and in good circumstances. This evidence was objected to, as being *res inter alios acta*. It was said, the issue was not whether he had defrauded the witness, but the plaintiff. Lord KENYON, however, declared it to be admisssible, because " it proved a subsisting fraudu- " lent connexion between the defendant and *Johnston*, and " might therefore go to the jury."

The testimony offered by the plaintiff below was clearly admissible, within the scope of the principles before mentioned. The recommendation by the defendants of *Talman*, a bankrupt of ruined reputation, to several merchants in Boston, as a man of large property, and safely to be trusted ; their concurrence in the same representations, at the same time, and apparently for the same purpose, conduced to evince the combination alleged. It is unnecessary to say, that the circumstances, of themselves, were plenary proof ; for if they were of any weight in the scale of justice, they should have been committed to the jury, for their consideration.

Whether the recommendation of *Peabody & Rogers* to the plaintiff was admissible evidence, must have depended on the previous proof of combination among the defendants. For the connexion between the parties having once been established, then whatever was done in pursuance of the conspiracy, by one of the conspirators, is to be considered as the act of all. This principle has been established by repeated determinations, and must be considered as at rest. (*h*)

We are, therefore, of opinion, that the testimony offered was admissible ; and that the judgment of the Superior Court be reversed.

EDMOND, *Asst.* dissented.

(*h*) 1 *East's Pleas of the Crown* 97.  2 *Mc. Nally* 611.