## GRANT *against* THOMPSON.

To prove the sanity of a party, at the time of his making a contract, evidence of the state of his mind, *before, at,* and *after* such time, is admissible.

Though the mere opinions of witnesses relative to the sanity of a party, are inadmissible; yet their opinions, in connexion with the facts on which they are founded, are admissible.

Where the defence, in an action on a promissory note, was the insanity of the defendant, at the time of its execution, the plaintiff offered evidence to prove, that before that time, while the defendant was of sound mind, he took a mortgage as security for certain responsibilities, which he had assumed for the mortgagor, out of which the note in suit originated, and

that after the execution of the note, while the defendant was again of sound mind, he received from the avails of such mortgage a sum more than sufficient to indemnify him for the note; it was held, that such evidence was admissible, not to ratify or confirm a contract originally void, but as conducing to prove a recognition of it by the defendant, as a valid contract, and that he was of sound mind when he executed it.

This was an action on a promissory note; tried in the county court of *Litchfield* county. The defendant pleaded *non-assumpsit*, with notice, that at the time of the alleged execution of the note, he was a lunatic and *non compos mentis*.

For the purpose of proving the lunacy of the defendant, and his incompetency, arising from an entire loss of his reason and understanding, the defendant offered evidence to prove, that for some time before, and at the time of, and subsequent to, the alleged execution of the note, he had, in consequence of grief, misfortune and sickness, wholly lost his reason and understanding, and was utterly incapable of understanding either the subject, terms or consequences of any contract or promise, which he made; and the only evidence thus offered, by the defendant, was of a continued and uninterrupted lunacy, and total want of understanding, commencing at a time prior to, and continuing at, and after the alleged execution of the note. The plaintiff objected to any evidence of the *opinions* of the witnesses; and to any evidence that the defendant was a lunatic, or *non compos mentis*, at any time *subsequent* to the execution of the note; insisting that the defendant ought to be confined to the time of the execution, and the time previous thereto. The court rejected the mere opinions of the witnesses, but permitted them to state their opinions, in connexion with the facts on which their opinions were formed, that there was a continued and uninterrupted lunacy, and total want of understanding, of the defendant, commencing at a time prior to, and continuing at and after the execution of the note.

The plaintiff, for the purpose of proving that the defendant, at the time of the execution of the note, was of sound mind and memory; and, also, that he had subsequently thereto, ratified and confirmed the promise contained in the note; offered evidence, that before the defendant became *non compos mentis*, he, together with one *Timothy Collins*, had received a mortgage deed of certain real estate from one *Isaac Newton*, to secure the defendant and *Collins* for certain res-

ponsibilities, assumed by them, for the benefit of *Newton*, from which the plaintiff claimed, that the note originated ; and that subsequent to the execution of the note, and at a time when the plaintiff claimed, that the defendant was of sound mind, the defendant received from the avails of the mortgage a sum more than sufficient to indemnify him for this note. To the admission of this evidence the defendant objected ; and the court rejected it.

*Litchfield,*
June,
1822.

Grant
*v.*
Thompson.

The plaintiff filed a bill of exceptions to these decisions ; and thereupon brought a writ of error in the superior court, which was reserved for the advice of all the Judges.

*P. Miner* and *Beers*, for the plaintiff in error, contended, 1. That evidence of insanity *subsequent* to the execution of the note, could not conduce to establish the defence set up, and ought to have been rejected. But if it was proper, then, *a fortiori,*

2. The evidence offered by the plaintiff, to prove the sanity of the defendant, and to rebut his defence, was proper, and ought to have been received. The facts, which the plaintiff offered to prove, were these : first, that prior to the pretended lunacy, the defendant assumed certain responsibilities for *Isaac Newton*, out of which this note arose ; secondly, that the defendant took from *Newton* a mortgage to secure these responsibilities ; thirdly, that this note was given for the debt thus secured by the mortgage ; and fourthly, that subsequent to the execution of the note, the defendant received from the avails of the mortgage sufficient to pay the note. These facts constituted a *connected train,* and were parts of *one entire* transaction, beginning when the defendant was confessedly sane, embracing the precise time when the note was given, and extending to a later period. The whole transaction evinced calculation, care and prudence. Had it been incumbent on the plaintiff, as a part of his case, to prove the sanity of the defendant, at the time of executing the note, this evidence would have been proper for that purpose. But it was sufficient for the plaintiff to repel the defendant's evidence ; and as the defendant's evidence had not been confined to the precise time of execution, the plaintiff was entitled to the same range, in order to meet it. Any acts of the defendant, shewing the state of his mind, during the period to which his evidence of insanity related, were proper, on the part of the plaintiff, to repel such evidence. If the acts in question had

a fair and reasonable tendency to this end, they ought to have been permitted to go to the jury, whose province it was, exclusively, to judge of their weight. *Gardner* v. *Preston,* 2 *Day* 205. *Gibbon* & al. v. *Hunter,* 2 *H. Bla.* 205. 228. 1 *Swift's Dig.* 768, 9.

Further, the evidence offered by the plaintiff, was proper, to shew, that the defendant, while he was confessedly of sound mind, recognized the note as a valid instrument.

*Bacon,* and *J. W. Huntington,* for the defendant, contended, 1. That it was competent for the defendant to prove a continued, uninterrupted lunacy, commencing anterior to the time of the execution of the note, and continuing from its commencement to the time of the execution, and for a period subsequent thereto; first, because it was evidence of the same state of mind, as existed when the note was executed. The fact to be established was the lunacy of the defendant when the note was executed. The evidence was, that before and after the execution he was a lunatic; and that *then,* he was in the same state of mind as when the note was executed. Secondly, the evidence was admissible, because it conduced to prove the state of mind at the period specified. The jury had a right to infer from his insanity before and afterwards, exhibiting the same general appearances, that he was insane during the whole period. *Evans* v. *Blood* & al. 3 *Bro. Parl. Ca.* 632. *Toml.* ed.

2. That the evidence offered by the plaintiff was inadmissible to evince understanding and mind, at the time of the execution of the note: or, in other words, to disprove the defence of lunacy; first, because it was irrelevant, and did not conduce to prove that for which it was offered. The fact to be made out, was either an acknowledgment of indebtedness to the amount contained in the note, or a promise to pay it. The evidence to substantiate it, was, the reception of money from a collateral security given to indemnify the defendant against certain responsibilities, from which this note originated. But the reception of the money did not imply an acknowledgment of indebtedness, or a promise to pay the note.

Secondly, the evidence in question did not conduce or tend to prove sanity. The enquiry related to the state of the defendant's mind, at the time when the note was executed. The evidence offered as conducing to prove it, was, the re-

ception of money from a collateral security, given while the defendant was sane, which security embraced responsibilities from which the note in suit originated. But no inference could be drawn from the reception of this money, that he was of sound mind when the note was executed ; because there was no connexion between such reception and the execution of the note. The two acts were separate and unconnected. It does not appear, that the money was received in discharge of the responsibility created by the execution of this note. He did, indeed, receive money more than sufficient to indemnify him for this note ; but he might have received it in discharge of his other responsibilities for *Newton.* Now, because he received money to discharge one responsibility, does it conduce to prove that he was sane when he assumed another responsibility ? But even had he received sufficient to discharge *all* the responsibilities, the fact would not conduce to prove that he was sane when he executed the note ; because this fact would be perfectly consistent with the fact of insanity at the time of execution. The act done is claimed as evincive of his knowledge of the note ; but if the same act would have been done had there been no such note, it cannot conduce to prove, either that he did, or did not know of its existence.

Again, the evidence offered was inadmissible, because it was of an act done when the defendant was admitted to be of sound mind. A rational act, done by a person of sound mind, *at one time,* cannot conduce to prove his sanity at any other time :—Indeed, if it conduces to prove any thing, it is, that a man possessing the use of his reason and understanding, can do, and often does, a rational act ; and that is all which it proves.

It is claimed, that on the 1st of *January, A.* is a lunatic, and evidence is introduced to prove it. To rebut this evidence, proof is offered, that on the 1st of *July* preceding, before he became a lunatic, and when he was of sound mind, he did a rational act. Could any inference be drawn from this act, that he was of sound mind on the 1st of *January ?* If so, the inference is drawn in the following manner. A man of sound mind may do a rational act ; and therefore, he must always be of sound mind. Now, what is the present case ? When the note was executed, it is claimed the defendant was *non compos :* to shew that this was not his *situation at this time,* the plaintiff offers evidence of an act done by him,

HARVARD LAW LIBRARY

when it is agreed *his lunacy had ceased.* Can any two things be more completely disconnected ?

The rule of discrimination is this. You may prove acts both before and after a particular day, to shew lunacy. You may prove acts during the same period, to shew sanity ; but the acts done, in both cases, must be while the person is in the same situation, in relation to his mental powers, as on the particular day specified. You may, therefore, prove, that while supposed to be insane, he did acts evincive of it ; and to rebut it, you may prove, that while claimed to be insane, he did acts which evinced understanding ; but you cannot prove the acts of a man of intelligence, agreed to be so, to shew, that while claimed to be a lunatic, he must necessarily do acts understandingly. The reason of this distinction will be perfectly obvious, by referring to the ground upon which any evidence of sanity is admitted, either before or after the particular day in controversy. It is admitted to enable the jury to infer, that he was of sound mind on that particular day. Now, if *after* that day, and having the same state of mind as *on* that day, he evinces reason and capacity, the inference may be fair, that he possessed it, *on* that day ; but if you admit him to be of sound mind when he does the last acts, you can draw no inference of what was the state of his mind, at *a time previous.* There is no room for presumption of sanity, excepting from what he does ; and what he does, *when admitted to be sane,* is no evidence that he might not previously have been insane.

HOSMER, Ch. J. This case presents the enquiry, whether the defendant was *non compos mentis* at the execution of the note in question ; and to establish this fact, the defendant was permitted to show certain acts evincive of a continued and uninterrupted lunacy, from a period commencing before the note was given, and terminating some time after. In the investigation of a point, which often is of great difficulty, it is frequently indispensible, to go into a history of the supposed lunatic's mind, both before, at, and after his contract, in order to ascertain his real condition, at the moment of entering into an agreement. Such tessimony is, undoubtedly, admissible ; and such has been the invariable practice. *Dickinson* v. *Barber,* 9 *Mass. Rep.* 225.

The county court rejected the mere opinions of the witnesses, relative to the defendant's insanity, but admitted them

*Litchfield,*
*June,*
*1822.*

Grant
*v.*
Thompson.

in connexion with the facts on which they were founded; and in doing this, they discriminated soundly and legally. This is not a novelty, but sanctioned by the usual practice of courts in such cases. *Swift's Ev.* 111. *Poole & al.* v. *Richardson,* 3 *Mass. Rep.* 330. *Dickinson* v. *Barber,* 9 *Mass. Rep.* 227. Such evidence is admissible, to confirm the witness, and to attach a proper confidence in his testimony, and to form a correct estimate of the credit due to him. In addition to this ; although it would be dangerous in its tendency, to admit the uncorroborated opinion of a witness, relative to the operations of another's mind ; yet, when it is found to be presumptively supported by facts, it carries with it a convincing weight. The best testimony the nature of the case admits of, ought to be adduced ; and on the subject of insanity, in my judgment, it consists in the representation of facts, and of the impressions which they made.

That the defendant received money for his indemnity, from the note in question, at a time when, confessedly, he was of sound mind, was a fact, which should have been received in evidence. This, it is true, would not ratify or confirm a contract originally void ; but it had a tendency to prove the recognition of it, and that the defendant was of sound mind when he made the note. If it conduced, in the smallest degree, to prove the sanity of the defendant, it should have been received, and left to the jury, who are the legal judges of the weight of testimony. *Gibson & Johnson* v. *Hunter,* 2 *H. Bla.* 205. 288. *Gardner* v. *Preston,* 2 *Day,* 205. ; and that it did thus conduce, I entertain no doubt. On this sole ground, the judgment of the county court was manifestly erroneous.

The other Judges were of the same opinion.

Judgment to be reversed.