## Case No. 16,165.

UNITED STATES v. RINDSKOPF et al.

[6 Biss. 259; 1 N. Y. Wkly. Dig. 223; 21 Int. Rev. Rec. 326; 8 Chi. Leg. News, 9.] [1]

District Court, W. D. Wisconsin.  Dec., 1874.

INTERNAL REVENUE LAWS — CONSPIRACY — OVERT ACTS—VENUE OF TRIAL.

1. Conspiracy. under the revenue act of March 2, 1867 [14 Stat. 471], is a combination between two or more persons to effect the purpose declared by the act to be illegal. The agreement may be expressed or implied, and the gist of the offense is the illegal conspiracy, the particular manner in which it was done, or to be done, not being material.

[Cited in U. S. v. Dennee, Case No. 14,948.]

2. It is not essential that any but the leading conspirator know the exact part which another was to perform.

3. If two are shown to have conspired. the acquittal of others jointly indicted does not prevent the conviction of such two.

4. The fact that the overt acts charged and proven were severally criminal, is no answer to an indictment for conspiracy, and an overt act, in itself criminal, may be proven, to show the existence of the conspiracy charged.

[Cited in U. S. v. Bayer, Case No. 14,547.]

5. Many cases cited and commented upon.

6. The defendants may be tried in any district where the overt acts were committed.

The defendants [Samuel Rindskopf and others] were indicted for conspiracy under section 30, Act March 2, 1867. It was alleged in the indictment that Alexander L. Rogers was the owner of a distillery at Middleton, and for the purpose and with intent to defraud the United States out of the tax upon the spirits manufactured thereat, conspired with Samuel Rindskopf, liquor dealer, of Milwaukee, Albert Mueller, his distiller, and James W. Bull. store-keeper at said distillery, to aid and assist him in carrying out such purpose; and that they did, in pursuance thereof, manufacture, dispose of, and defraud the government out of the tax upon large quantities of spirits manufactured thereat, and setting forth the various and illegal means and devices used for that purpose.

Before the trial commenced a nolle prosequi was entered as against the defendant Alexander L. Rogers. On the trial against the other defendants, he was called as a witness, and testified that he went into the business for the purpose and with the intent to

[1] [Reported by Josiah H. Bissell, Esq.. and here reprinted by permission. 1 N. Y. Wkly. Dig. 223, contains only a partial report.]

manufacture illicit spirits; that after he had commenced, he went to Milwaukee and saw Rindskopf, and there told him, in substance, that he was engaged in manufacturing illicit spirits, and that he could get them from the still or government warehouse to his rectifying house without paying taxes, but he did not know how to get them from there upon the market, and asked Rindskopf to assist him, and that Rindskopf then told him he would go in with him and take the wines, and pay him Chicago prices, less twenty-two cents, which he was to retain as his share of the speculation or risk; that Rindskopf told him how to proceed to get them to his house, to wit, that he (Rogers) should put them in new barrels at the rectifying establishment, and get the gauger here to gauge them as whisky, and put on whisky stamps and ship them to his firm as such; and that they would receive them at the depot, and pay for them at the prices named. And he further stated that, under that agreement, he sent to them highwines under such false labels, from time to time, and that they were received and paid for upon the terms of that agreement; stating the mode and amount of two of the payments. Rogers stated that after that he continued to manufacture illicit spirits, and that Mueller was the distiller and did the work, or superintended it, and that Bull, the store-keeper, had full knowledge of it, and received from him $100 per month for neglecting his official duty, and permitting him to use what material he wished, and to take the spirits from the warehouse without payment of the tax. He further stated that, after some trouble with the revenue officers in February, he was ordered to send them two-stamp goods, and, if not detected, he would not enter them on the books.

Henry Lacher, another witness, testified that he had charge of the rectifying house under Rogers first, and afterwards under Rogers & Bunker, and that spirits were often received at the rectifier and dumped, upon which the government tax had not been paid, and described the means adopted to accomplish that purpose, particularly, and that such spirits or highwines were afterwards placed in other barrels and marked whiskies, kimmel or bitters, and stamped by the gauger either as whisky at 66 or 68 proof, or as bitters, no proof, and that they were shipped by rail to Rindskopf Bros., Milwaukee; that they were entered on their book at the rectifier according to the gauger's mark, and Rindskopf Bros. were charged with them at the market rates for such goods. This, he said, continued up to about the 11th of February, when he changed and shipped them as highwines with two stamps, but that they were, with a few exceptions, got out of the warehouse and placed in stamped barrels and no tax paid thereon. He further said that he received statements of sale and account and that they were paid for as highwines at the rate stated by Mr. Rogers, to wit: Chicago prices and

twenty-two cents off; that those statements and letters accompanying were returned to Mr. Rindskopf at his request after seizure. Other testimony was given sustaining and corroborating these general facts.

J. C. Kenney, for the United States.

H. S. Orton, Geo. B. Smith, P. L. Spooner, Gregory & Pinney, G. W. Goodwin, and H. M. Lewis, for defendants.

HOPKINS, District Judge (charging jury). The defendants were indicted under section 30 of the act of March 2, 1867 (United States revenue laws), for a conspiracy. This section reads as follows: "If two or more persons conspire, either to commit any offense against the laws of the United States or to defraud the United States in any manner whatever, and one or more of said parties to said conspiracy shall do any act to effect the object thereof, the parties to said conspiracy shall be deemed guilty of a misdemeanor, and on conviction thereof shall be liable to a penalty of not less than one thousand dollars, and not more than ten thousand dollars, and to imprisonment not exceeding two years." 14 Stat. 484. The act declares what illegal purposes constitute a conspiracy. But in construing it, it becomes necessary to ascertain what is meant in this act by conspiracy. It may be defined as an agreement or combination between two or more persons to effect the purpose declared by the act to be illegal,— to do one of the things prohibited in the act. The indictment here in substance charges the conspiracy to be to defraud the United States out of the tax upon certain spirits to be distilled at the distillery of Alexander L. Rogers, in Middleton.

In the first count the charge of an agreement to manufacture illicit spirits at that place is expressly alleged. In other parts it is also alleged that the agreement was to do so by breaking seals and stamps placed upon certain tubs, and to use them unlawfully for the purpose of manufacturing illicit spirits. I have ruled during the trial that the gist of the offense was the illegal conspiracy to manufacture, and that the particular manner in which it was done, or to be done, was not the material question in the case; that the question to be determined under this count was whether there was a conspiracy between the parties to manufacture and remove spirits so manufactured without the payment of the lawful tax, to defraud the United States. Now the question is, did the parties, or any two of them, enter into a scheme to illegally manufacture spirits, with intent to defraud the government out of the tax by law imposed thereon. If they did, it constituted a conspiracy within the meaning of the act above mentioned, and on that question it is immaterial whether a seal or stamp was broken or not.

In order to charge the parties as conspirators, I do not think it necessary to prove an express agreement between all the parties to do the illegal act. It would be enough if you should find that all of them had the same illegal purpose in view and each acted a certain part to accomplish or tending to accomplish it. But you must be satisfied that each had the same common design and acted to carry such design into effect. In other words, if you should find that Rogers' purpose was to unlawfully manufacture spirits and remove the same from his distillery, and place them upon the market without paying the tax thereon, and that as a part of such corrupt purpose, he induced the storekeeper, Bull, to abstain from doing his official duties, so that he could obtain the material contrary to law, to use for such purpose, and employed Mueller, his distiller, to secretly manufacture the same into spirits, and, to assist him in his unlawful purpose aforesaid, employed Lacher to receive and conceal such spirits in the rectifying establishment of said Rogers, and by an agreement with the defendant Rindskopf, and at his suggestion, Lacher and the government gauger were employed to place said spirits into other barrels and gauge them as whisky and other articles of less proof, and then ship them under such false and fraudulent stamps to the defendant, or to the house of which the defendant was a partner, and that said defendant personally knew of their receipt under such false labels and stamps, and concealed or aided in concealing such facts, to defraud the government, and for the purpose of enabling the said Rogers to defraud the government, out of the legal tax thereon and share the proceeds with him,— you might be at liberty to infer from these facts that the parties acting for the common purpose were all guilty of conspiracy. It would not, in such a case, be necessary to show that the parties had any previous acquaintance, or, with the exception of Rogers, knew of the exact part the other was to perform. In such a case, each might be considered a co-conspirator with Rogers, and being so, would be responsible for his acts in carrying out the illegal purposes. And if you should find such acts to have been done in the carrying out of such illegal purpose, and that the illegal purpose was common to all, you would be authorized to find that the conspiracy was established as to all. If they knew the intention of Rogers, in procuring them to do such acts, to be to defraud the government, and that their acts respectively aided and assisted him to carry into effect such illegal purpose, and that they did the several acts to them assigned, on purpose to enable Rogers to successfully carry out his illegal designs, it would be a conspiracy as to all of such parties, if their overt acts are satisfactorily proven.

In determining the question of conspiracy, Rogers may be reckoned as one, so that if either of the others conspired with him to do

the acts alleged in the indictment, although you might find that the other defendants did not conspire with them, you might find that one guilty under this indictment, provided the overt act to effect it is satisfactorily proven.

The defendants were all found guilty by the jury.

## On Motion for New Trial and in Arrest of Judgment.

HOPKINS, District Judge. The defendants having been convicted by the jury of the conspiracy charged against them, now move the court for a new trial and in arrest of judgment, and have, in the argument in support of the motion, mainly relied upon the following points: (1) That the court erred in its charge as to what constituted a conspiracy; (2) that as the overt acts set out and proven were severally criminal, and the parties committing them were liable to a specific punishment, after such acts had been performed the parties could not be held liable for a conspiracy to do them; and (3) that the verdict is against evidence.

The first two are those mainly relied upon. As to the first, after listening to the able and ingenious argument of the learned counsel, and after a careful and critical re-examination of my charge on the question, I am thoroughly satisfied that I correctly instructed the jury on that point. The instruction and charge on that question is supported and warranted by the following authorities: Rex v. Cope, 1 Strange, 144; People v. Mather, 4 Wend. 260 et seq; Rex v. Parsons, 1 W. Bl. 392; Gardner v. Preston, 2 Day, 205; U. S. v. Cole [Case No. 14,832]; Com. v. Warren, 6 Mass. 74; Reg. v. Murphy, 8 Car. & P. 297; 3 Greenl. Ev. § 93; 2 Bish. Cr. Law, § 187.

The law upon the second point I find too well settled and uniform against the defendants to be at this time questioned. The fact that each of the overt acts constitutes an offense is no answer to this indictment for conspiracy. Upon a charge of conspiracy, an overt act, which is itself criminal, may be proven, to show the existence of the conspiracy charged. Conspiracies, from their very nature, are usually entered into in secret, and are consequently difficult to be established by direct evidence. It has been, therefore, universally held that they may be inferred from circumstances. The common design is the essence of the charge, and may be shown by circumstances and the acts performed by the different alleged conspirators; and the fact that the several acts constitute separate criminal offenses, does not exonerate the parties from the crime of conspiracy, or bar a prosecution therefor. This is sustained by an almost unbroken chain of authorities, both in this country and England.

In Reg. v. Boulton, 12 Cox, Cr. Cas. 87, in court of queen's bench, before Chief Justice Cockburn, in 1871, although the course of receiving proof of the commission of the substantial crime is not regarded as satisfactory, yet it is decided that such a course is legal, and in that case, it being a charge of conspiracy to commit a felonious crime, proof of the commission of the crime itself was allowed. The chief justice cited and relied upon the authority of the late Lord Cranworth in Reg. v. Rowlands, 5 Cox, Cr. Cas. 497, note. In that case the parties had been indicted, not for the offense they had committed, but for a conspiracy to commit it, and the judge, after stating that it would have been more satisfactory if the parties had been indicted for what they had done and not for conspiracy to do it, stated "that the course pursued was no doubt legal, and, being legal," he said, "I shall not now step out of the path of my duty by speculating upon the policy that has been adopted in this case. It would be much more satisfactory to my mind if parties had been indicted for that which they have directly done, and not for having previously conspired to do something, the having done which is proof of the conspiracy. It never is satisfactory, although undoubtedly it is legal." I have quoted this language as expressive of my first view of the question when raised during the trial, and I can say now as I said then, that the better way, in my judgment, would have been to have indicted all parties here for the particular offense committed by each, but under the law it seems I have not the right to say they must be so prosecuted. The course pursued in this matter by the government attorney, in the language of those cases, is "undoubtedly legal," and I can, therefore, only consider the case as it is presented on this indictment.

These cases, if followed, dispose of the second question so strenuously pressed by defendants' counsel. The case of Com. v. Kingsbury, 5 Mass. 106, laying down a contrary doctrine, does not seem to have been followed in that state, for the same judge (Parsons), in Com. v. Warren, 6 Mass. 74, refused to arrest a judgment on a charge of conspiracy, where the overt act was a felony, and was completed and the avails of the crime divided; and in Com. v. Davis, 9 Mass. 415, it is held that acts in execution of the conspiracy may be shown, in aggravation. In the case in U. S. v. Boyden [Case No. 14,632], being an indictment under the same act and section as this, this question was raised and examined upon principle and authority, and Judge Lowell, before whom it was tried, arrived at the conclusion that though the act concerning which the conspiracy was formed was completed, and there was a specific penalty for doing that act, still the government could elect under which to proceed. This doctrine is also supported by People v. Mather, 4 Wend. 259; Collins v. Com., 3 Serg. & R. 220. The dictum in the opinion of Senator Spencer, in Lambert v. People, 7 Cow. 103, I do not think entitled to much weight, as the case

there did not turn on any such question. Indeed, it is impossible to tell what principle was settled in that case in the court of errors. [The senators seemed to have embarked on an uncertain sea of generalities, and to have spent their energies in magniloquent declamation, better suited to the forum than the bench. The plain, simple sentences in the opinion of Chief Justice Savage in same case, on page 166 of same volume, are far more satisfactory, reasonable, and convincing. The law on this question is too well established to be now overturned.] [2]

On the other point, that the verdict is not supported by the evidence, I need only say that if the jury believed the testimony of Rogers and Lacher, the charge was most clearly made out. Assuming their testimony to be true, the fact of an unlawful conspiracy to defraud the government out of the tax upon spirits to be manufactured at Rogers' distillery, as charged, is established beyond all controversy. The section of the act declaring the conspiracy expressly provides that the parties may be tried in any district where the conspiracy is committed, or an overt act is done in furtherance of the illegal purpose. The overt acts were performed in this district, and the case is properly triable here.

[During the trial several questions were raised of a technical character, as to the particular means by which illicit manufacture was effected. I then overruled them as not tenable, and as too critical, and since that time my attention has been called to section 8 of the amended practice act of 1872 (17 Stat. 198); and, if I had any doubts upon the questions before, that section has removed them. The objections have not, however, been renewed in this motion, and I presume the counsel are satisfied that they are made unavailing by the section of the act above referred to, even if they were good before its passage.] [2]

The motion for a new trial and in arrest of judgment is overruled.