# Malson *against* Fry.

If it be the opinion of the court, that all the facts given in evidence by a plaintiff, if true, fail to establish his right to recover; it is their duty so to instruct the jury. And if a jury should find a verdict against such instruction, a new trial ought to be granted.

The facts of one in possession of land having been driven from it by a flood or other accident, and when out kept out of possession by the force of an adverse claimant; although he may continue to endeavour to obtain the possession, yet the statute of limitations will be a bar to his recovery, after such adverse claimant has been in possession twenty-one years.

This court will not reverse a judgment for error in the instruction of the court below to the jury on one point, when they were right in saying, on another point, that if all the plaintiff's evidence be true, he is not in law entitled to recover.

ERROR to the district court of *Lancaster* county.

This was an action of ejectment by *Ephraim Malson* and others, heirs at law of *Thomas Malson* deceased, against *John Dritt* and *John Fry*, for three islands in the Susquehannah river in Manor township, Lancaster county, containing altogether about sixty acres. During the progress of the trial many bills of exception to the admission of evidence were taken; but the court below being of opinion, that if all the plaintiffs' evidence were true they could not recover, that point alone was decided by this court. The evidence on that subject was, that *Thomas Malson*, the father of the plaintiffs, obtained the possession of the islands in dispute and had cultivated them for some years, when he was driven from them by the " pumpkin flood" in 1784. Before he returned, *Jacob Dritt*, under whom the defendants claimed, had obtained the possession; and when *Malson* came back, *Dritt* repelled him, and kept the possession by force. At several other times *Malson* attempted to get the possession again, but always failed. The defendants, and those under whom they claim, had been in possession for forty years before this suit was brought; and the proof was, that during all this time *Malson*, and his heirs after his death, were continually exerting themselves to re-obtain the possession.

Upon this evidence as to the possession, the court below was of

3 E

opinion, that the statute of limitations was a conclusive bar to the plaintiff's recovery, and so instructed the jury, who found a verdict accordingly.

*Frazer* and *Champneys,* for plaintiffs in error.
*Jenkins* and *Hopkins,* for defendants in error.

The opinion of the Court was delivered by

KENNEDY, J.—No less than twenty errors have been assigned; but if the court below were right in answering the first point of the defendant, which is made the ground of the twelfth error, all the other matters complained of as error become immaterial and irrelevant; for even supposing there be error in some of them, yet when corrected, by no possibility could they aid the plaintiff's recovery. *Edgar* v. *Boies,* 11 *Serg. & Rawle* 450.

The answer of the district court then to the defendant's first point, was in substance a direction to the jury, that admitting all the facts and circumstances, of which the plaintiffs gave any evidence, to be true, still they had not shown such a title to the possession of the land in dispute as in law entitled them to a verdict in their favour.

This matter being assigned for error, has, as may be observed, necessarily brought up before us the whole of the evidence which was given by the plaintiffs on the trial of the cause. It also appears from the record and proceedings returned, that all the evidence offered by the plaintiffs was received, excepting the record of an indictment and the proceedings thereon, in the quarter sessions of Lancaster county, at March sessions 1828, which was clearly not admissible, and therefore very properly overruled.

To the charge of the court in this behalf, it is objected by the plaintiffs' counsel that the court withdrew the matters of fact from the decision of the jury. Doubtless wherever the facts in a case are controverted, it belongs exclusively to the jury to decide on them: *ad questionem facti juratores respondent* is the maxim. But in this case, after the plaintiffs had given all their evidence, the defendants' counsel put it to the court and jury in such a manner as to free the case from all dispute or controversy about the facts; because, in asking the court to charge the jury as they did in their first point, they are to be considered as conceding and admitting the *truth of all facts* which, upon the evidence given by the plaintiffs, *might* be found by the jury *in favour* of the plaintiffs. Now I think it cannot be denied but that it belongs to the court, as a question of law, to decide whether evidence offered to be given by a party may or can not conduce to the proof of a particular fact; otherwise courts usurp a power every day that does not belong to them, in rejecting evidence offered, because in their opinion it does not tend to prove or disprove the facts put in issue between the parties, and therefore irrelevant and not admissible. It is obvious that the trial of a cause might become interminable if the court could not exercise such a power. But to

[Malson v. Fry.]

decide upon the relevancy of the evidence, if offered by the plaintiff in support of his claim, the court must necessarily, as a question of law, decide whether the facts which the evidence has a tendency to prove, are or will be sufficient to sustain his claim.   If, however, the evidence should be all given without objection, cannot the court decide as well then as if it had been objected to before it was given, what the facts are which it tends to prove, and whether or not they are in law sufficient to support the plaintiff's demand?   Most unquestionably it may: and should its attention be called to the point by the counsel of the defendant, with a request to charge the jury as was done in this case, I consider it the duty of the court, when it is decidedly of opinion that the evidence given by the plaintiff, supposing it to be all true, does not tend to prove such facts as will in law entitle him to recover, to tell the jury so; or, in other words, " taking every fact and circumstance given in evidence to be true, still the plaintiff had entirely failed to make out his case."   That the court might do so, was ruled expressly by this court in the case of *Weidler* v. *The Farmer's Bank of Lancaster*, 11 *Serg. & Rawle* 141. And if a jury were, after such direction from the court, to find a verdict for the plaintiff, it would be the duty of the court to set it aside and grant a new trial.

What then are the facts which the evidence given on the part of the plaintiffs in this case had a tendency to prove?   In its utmost extent, it can not be claimed that it proved more than that after the land in dispute, consisting of three islands in the Susquehannah river within that part of Lancaster county in this state which was claimed by Lord *Baltimore* as a part of Maryland, had been granted by the then proprietor of Maryland, by patent dated the 22d of October 1736, to *Thomas Cressop*, who by his deed dated the 18th of March 1741 conveyed the same to *Jacob Myers* of Lancaster county, *Thomas Malson*, the father of the plaintiffs who as his heirs claim the land, was in the possession of it from fifteen to twenty years before the autumn of 1784, when a flood called the " pumpkin flood" came and compelled him to quit the possession, leaving a crop of corn growing upon it; and when he returned after the flood had abated to resume the possession, he found *Jacob Dritt* in it, who repelled him by force, drove him off, and would not let him enter.   That *Jacob Dritt* from that time kept *Thomas Malson* out of the possession, and continued to possess, occupy and farm the islands by himself and his tenants, till his death in the year 1815 or 1816, when his heirs succeeded him in the possession, and continued it by themselves and their tenants till the bringing of this action on the 25th of October 1819.   That in the spring after the flood *Thomas Malson* tried to get into possession, but *Jacob Dritt* prevented him, and that, as one witness said, " there had been disputes about the islands from that day to this;" and another that " the *Malsons* have been at variance with *Dritt* and his executors about his title to the islands."   That during this period *Jacob Dritt* built a two story dwelling house upon one of the

[Malson v. Fry.]

islands, and a dwelling house and barn upon a second. That *Thomas Malson* died about 1813; and between 1812 and 1814 when *Jacob Dritt* was about putting a tenant of his of the name of *Shigly* into possession, he found some things of *William Malson's*, the eldest son of *Thomas Malson*, in the house, which he threw out; and some days after *William Malson* took them away. That about 1824, after the bringing of this action, *Ephraim Malson*, another son of *Thomas Malson*, was in a shanty on the island upon which *Jacob Dritt* had not built a house, having with him pots, kettles, pans, and a kind of bed. While there he was grubbing and clearing upon it, when he was forced off from it.

From this it appears that while the title and right to the land in dispute were vested in *Jacob Myers*, *Thomas Malson*, by intrusion, took the possession of it, in which he continued without shadow of title for the space of from fifteen to twenty years, when he was expelled by the flood; and *Jacob Dritt* took the possession before his return, and kept him out by force ever after. Although the possession which *Thomas Malson* had had of the land before the flood might have been sufficient to have enabled him to have maintained an action of ejectment against *Jacob Dritt* or his tenants, if he entered without title or the authority of one who had, or to have prosecuted and supported an indictment for forcible detainer; yet about twenty-eight or twenty-nine years after having thus lost the possession he died, without ever having attempted to regain it in either way. From the spring of 1785, as long as he lived, there is not a particle of testimony tending to show that he ever made an entry and claim upon the land; nor that any person did so by his authority for him.

That the possession of *Jacob Dritt* was from its commencement, and continued to be throughout, adverse and hostile to *Thomas Malson* in his claim to the land, can not admit of a shadow of doubt. That it was continuous and notorious is equally clear: in short, that it was every thing under our act of limitations to make it a complete and positive bar to the plaintiff's action is so palpable from the evidence given by the plaintiffs themselves, that the district court could scarcely be said to have administered the law, and to have discharged its duty, if it had not told the jury so. This, then, being the condition of the plaintiffs, it follows necessarily that even if there were errors committed in other matters on the trial of the cause, they can not prejudice the plaintiffs, and therefore would be no good ground for reversing the judgment upon this writ of error.

Judgment affirmed.