# THE STATE v. ROGER.

The prisoner applied to the Supreme Court for a writ of *habeas corpus*, on the ground that there was no prospect whatever of having his appeal tried during the present term of the court, or earlier than the November term thereof.   The court directed an immediate trial, and held, that writs of *habeas corpus* are undoubtedly matters of right; but courts and judges are bound to do, in relation to them, what is right between the prisoner and the public.   The prisoner ought not to be bailed, on the ground that he cannot have an immediate trial, when the court is ready and willing to afford him that remedy.

The idea, that where a writ of *habeas corpus* is issued, there is an abstract right to immediate action upon it, without regard to circumstances, is wholly untenable.

The Supreme Court will, if possible, avoid coming in conflict with the district courts, by writs immediately directed to them to perform their duties.

When a judge delivers his opinion to the jury, on facts, it ought to be given as a mere opinion, and not as dictation; the jury should be left to understand clearly, that they are to decide the fact on their own view of the evidence, and that the judge interposes his opinion to aid them in the conscientious discharge of their responsible duties.*

APPEAL from the First District Court of New Orleans, *Buchanan,* J. *Isaac Johnson,* Attorney General, for the State. By the court: (*Slidell,* J., absent.)

PRESTON, J.   The prisoner was accused of murder, convicted of manslaughter, and took an appeal, which was made returnable to this court on Monday, the 28th of this month.

On the 25th of the month, he presented a petition for a writ of *habeas corpus,* for the purpose of being bailed.   His application was based mainly on the ground stated in his petition, that "he is informed, and believes, that there is no prospect whatever of having his appeal tried during the present term of the court, or earlier than the November term thereof."

This court, being in session, and criminal business being entitled to preference over all other business, announced their readiness to hear the cause, directed it to be fixed for trial on the return day, and that the attorney general and counsel for the prisoner should be notified, as the trial of the case would supercede the main ground upon which the application to be bailed was based.

Although bound to grant a writ of *habeas corpus* to bail, even after conviction, as decided by this court in *Longworth's* case, yet we exercise the power, as intimated in that case, with reluctance, because, in doing so, we are obliged to hold a law of the General Assembly to be unconstitutional; because this court was divided in opinion; and because the district court holds a contrary opinion; and, because we are all sensible of the evils to which the exercise of the power may lead.   It is our duty, therefore, to avoid the exercise of the power, if it can be done consistently with the rights of the applicants.   We thought it could, in this case, by affording him an immediate trial, which we directed.

---

*See an Act " To restrict the charge of the judge, in every criminal case, to an opinion on the law." Acts 1853, p. 249.

The counsel of the accused appeared on the day assigned for the trial, and insisted on his right to be bailed, uncontrolled by any circumstances whatsoever. Writs of *habeas corpus* are undoubtedly matters of right; but courts and judges are bound to do, in relation to them, what is right between the prisoner and the public. The prisoner ought not to be bailed, on the ground that he cannot have an immediate trial, when the court is ready and willing to afford him that remedy. The State, the appellee, was ready; and the appellant is always presumed to be ready, until he makes the contrary appear in a legal manner.

The idea, that when a writ of *habeas corpus* is issued, there is an abstract right to immediate action upon it, without regard to any circumstances, is wholly untenable. It will be seen in 3 Burrow's Reports, that certain prisoners in England obtained a writ of *habeas corpus*, on the ground, that they had been illegally arrested. It was rendered probable, on the return of the writ, that they were convicts and fugitives from justice. The court, instead of releasing them, ordered a trial, to ascertain whether they were convicted felons or not, and having identified them as such, ordered them to be executed, under their former sentence, instead of being released, because of their subsequent illegal arrest. So that proceedings, under this writ, must be such as the circumstances require. Substantial justice must be done between the applicant and the State.

An application was, some time since, made by the prisoner to this court, for a *mandamus* to the First District Court of New Orleans, in which he was tried, to sign a bill of exceptions, intended to show that the judge, in sentencing the prisoner, addressed him entirely in the French language, and used that language in passing the sentence on him; and yet, that the sentence was entered upon the minutes, in the English language, by the clerk. The object seemed to be to raise the objection, that no legal sentence had been passed upon the prisoner. The case had been tried under the direction of the judge of the Fifth District Court, and the sentence pronounced by him, in the absence of the judge of the First District Court, on account of sickness, and the latter had declined to sign the bill of exceptions. It does not appear that any objection had been made to the mode of passing sentence by the judge who presided, or application to him to sign a bill of exceptions.

This court declined issuing the writ of *mandamus*, but informed the counsel, through their clerk, indeed stated in open court, that the matter would be considered on the trial of the case, and, if deemed material, means would be afforded, if possible, to secure the accused the benefits of the facts alleged by him.

Taking it for granted, generally, that the district courts will perform their duties, we deem it wise to avoid, if possible, coming in conflict with them, by writs immediately directed to them, to perform their duties. We did not think there was any thing in the application of the accused which required the extraordinary interposition of this court, by a writ of *mandamus*. The English was the native language of the judge who tried and sentenced the prisoner. The native language of the prisoner was French. We have no doubt, admitting the facts stated in the application, that the judge used the French language in explaining to the accused the laws, under which he was about to pass sentence upon him, and the necessity of enforcing them by punishment, and passed sentence in the same language, for the advantage and satisfaction of the accused, and to afford him the best possible means of knowing and understanding the proceedings and final judgment against him. The clerk recorded the sentence in the English

language, as he was bound to do by the Constitution of the State. It is known to this court, that the French and English languages are equally familiar to him, and if they were not, that there is a translator provided for the court. We have no doubt he recorded the sentence correctly, and there is not even a suggestion to the contrary. Besides, if there was any injury in the proceeding to the accused, the objection of his counsel should have been made, and the bill of exception taken, and efforts made to remedy it before the judge who tried the case, and at the time it occurred. But, we think, no injury was done to the accused ; and, organized as this conrt is, loaded with business almost beyond the power of performance, it is indispensable to economise time, and to confine our labors to matters of substantial importance. We consider appeals allowed in criminal cases for the re-examination of substantial questions of law, which may have materially affected the decision of the case.

Nevertheless, we would have been glad to have heard the learned and talented counsel of the accused on this matter, as well as the bill of exceptions, and other questions raised in the record. But he did not deem it proper to afford the court the benefit of his counsel, in consequence of our determination to pass upon the case at this term, unless good cause was shown for a continuance. We do not consider the absence of one of his able counsel sufficient. Questions of law alone are to be examined here, and we concur fully in what was stated at the hearing, that the counsel present was as able to examine these questions as this court. The attorney general submitted the case, and we have been compelled to perform our duties to the State and public, to the best of our judgment, without that aid.

On the bill of exceptions, the Chief Justice has prepared the following opinion, in which we all concur :

EUSTIS, C. J.   In the charge to the jury the judge stated that, in the court's opinion, an offence had been committed by the defendant *Roger*, but whether that offence was murder or manslaughter, the court declined to give any opinion; to which the defendant, by his counsel, excepted. Whereupon the court further stated, that it had summed up the evidence and given its opinion, but recognized the right in the jury to decide both upon the law and the evidence, and, of course, they were not bound by the opinion of the court with regard to either.

The result of our inquiries on the subject presented by this bill of exceptions is, that there is no fixed rule, on examining the extent to which a judge, in his charge to the jury, may express his opinion, in relation to the truth or weight of testimony. It is manifest, that if a judge abuses the discretion reposed in him, and not content with expressing his opinion, undertakes to dictate to the jury on questions of fact, the verdict will be set aside, and a new trial granted. And, when a judge delivers his opinion to the jury on facts, it aught to be given as a mere opinion and not as dictation, and the jury should be left to understand clearly that they are to decide the fact on their own view of the evidence, and that the judge interposes his opinion to aid them in the conscientious discharge of their responsible duties. Cases have occurred before us, in which we have found great difficulty in drawing the line prescribing the duty of the judge on questions of fact. See the cases of the *State* v. *Green*, and *State* v. *Chandler*. Chief Justice Parker, a judge of great learning and experience in criminal cases, thus speaks in the case of the *State* v. *Child*, 10 Mass. Rep.

But it will be objected that the judge may have said many things tending, to make the jury incline to one side or the other. This would raise the question,

whether a judge may reason upon the facts; and, if he intimates to the jury his own opinion of the evidence, whether this shall be cause for setting aside the verdict. We know of no rule requiring the judge to conceal his opinion. He is to comment upon the evidence. Is he to do it by merely stating that one witness says this thing, and another says that? Has he not power to say, this evidence is weak, and that evidence is strong? For myself, when the evidence on one side is nealy balanced by counter evidence, I endeavor to leave it to the jury to decide which scale preponderates; but, if the evidence on one side is strong, compared with that of the other side, I think it my duty to make the jury comprehend that it is so. *Turman* v. *Howard*, 3 Marshall, 384. *Conner* v. *State*, 4 Yerger, 137. *Sneed* v. *Breath*, 1 Hawks, 300. *Gordon* v. *Taber*, 5 Vermont Rep., 183. *Burt* v. *Gwinn*, 4 Harr. and Johnson, 507. *Roper* v. *Stone*, Cooke, 490. *Matson* v. *Fry*, 1 Watts, 433. *Governor* v. *Shelby*, 2 Blackford, 26. *Slatter* v. *Latspan*, 2 Watts, 167. Graham, on new trials, 310, *et seq.*

There is nothing before us which induces the belief, that the judge attempted, unduly, to bias the jury, or that his estimate of the weight of evidence was not just; and, we find that he expressly recognizes the right of the jury, to judge for themselves, and to determine on the facts, without being bound by the opinion of the court.

The law presumes intelligence on the part of juries; and, any improper interference with their province, on the part of the judge, is more likely to make them find a verdict against his opinion, than in accordance with it.

Undoubtedly, the manner of instructing the jury, sometimes, has an undue influence on the verdict, but it results from an imperfection of the system.

We think, therefore, that there is nothing in this bill of exceptions, which should authorize us in setting aside the verdict.

In the motion for an arrest of judgment, it is stated that the indictment is defective. We have examined it with care, but are unable to discover essential defects.

There being, then, a good indictment, a verdict of a jury finding the prisoner guilty of manslaughter, and no cause shown in arrest of judgment, we are of opinion that the judgment of the district court, as spread on the record, should be affirmed; and, by reason of the premises, adjudge and decree, in consideration of the verdict, and of the second section of an act for the punishment of crimes and misdemeanors, and other supplementary acts, approved the 20th of March, 1818, that the said *Augustin V. Roger*, for his offence of manslaughter, as found by the verdict, be sentenced to ten years' hard labor in the State penitentiary, to commence the 22d of May, 1852, and to pay a fine of one thousand dollars, and the costs in both courts.