The opinion of the Court was delivered by
Duncan J.
The right of the plaintiffs depended on the validity of a paper, purporting to be the last will and testament of one Michael Rambler, the owner of the land, for which this ejectment was brought. If this was not his last willand testament, the defendants in error,and plaintiffs below, were entitled to a verdict. The execution of the will was duly proved by the subscribing witnesses, who likewise attested the capacity of the testator, and that he was of sound and disposing mind and memory.
The will was impeached on the ground of imbecility.of mind of the supposed testator from his childhood to the hour of his death ; and witnesses were offered to prove certain facts, tending to shew an extraordinary dulness of understanding, followed up by the opinion of, the witnesses, as founded on the facts, who hád known Rambler intimately from his childhood to his death, that he was incapable from defect of understanding to make a will. All this evidence was objected to, and the objection overruled, and evidence admitted. I am at a loss to perceive any plausible reason to support this objection. I know not how otherwise the alleged imbecility of mind could be proved, than by the evidence of those who grew up with him, who marked his conduct in infancy, in the prime of life, and in his decline. The opinion of the witnesses, without stating the grounds of such opinion ought not to be received. But when they state facts, indicative of want of common intellect, their opinion is always received. The weight it ought to have, will depend *93 on the solidity of the reasons assigned for the opinion, and the intelligence of the witness.
This is not a case of alleged lunacy It is in the nature of ideocy. « Not an - obscuration of the mind at particular seasons, but a continued darkness of the, understanding from birth until death, a perpetual infirmity from infancy, rendering him incapable- of managing himself and his affairs. This is the allegation. I say nothing; nor is it my duty to give an opinion, whether the proof when admitted, made out, or did not make out the case of those claiming as heirs. To confine it to subscribing witnesses to the will in such case as this, would be absurd. It is not alleged that during a partial privation of understanding, he signed the will, but that he never was at any time of his life capable of making his will, and in .that case I can see no good reason for excluding .all-but the subscribing witnesses to the will. The. friends who visit him, the physician who attends him, have equal if not superior means of information, to him who may be.called on, (after the will is declared in his presence,) to attest the publication. The will of every man would depend too much on the subscribing'witnesses, if no other 'were deemed competent to testify’ to the. sanity of the testator. The mo.st spurious instrument would be imposed on the heir, or the devisee might be deprived of the estate devised, by a conspiracy, of the subscribing witnesses. Such conspiracy is no.t without a pre-' cedent in law. Lowe v. Jolliffe, 1 W. Bl. 365. Five .subscribing witnesses to a will and a codicil, and a dozen of servants of the testator, unanimously swore him to be incapable of making a will. To encounter this evidence several of his friends who had frequently conversed with -him during a period of four years, deposed to his entire sanity and'more than ordinary-intellectual vigor. The will was established, and the testamentary Witnesses convicted of perjury. This evidence was properly received.'
The declaration of the testator, that his wife and father-in-law plagued him to go to Lebanon, that they wanted him to. give her all, or He would have no rest, that he did not want to go to Lebanon ; this would be evidence of weakness of mind, operated upon by excessive' and undue importunity. It forms no objection to it, that these murmurs ofa weak mind were, made in the absence of the devisee'. We should be *94 surprised to hear that they were made in the presence of that devisee, an importunate and teasing wife. There often will be influence used in procuring a will, but this can be no reason to set it aside; but undue importunity, plaguing a weak, man, giving him no rest, until he would give all, are circumstances to j3e considered by a jury,'in connection with proof of imbecillity of understanding, denoting a man.so void of reason, as that he is incapable of man&ging or disposing of his estate.
As to the rejection of the deposition of John Snee, the Court had. established certain rules for filing depositions; these had not been complied with, and the deposition was properly rejected,
In .the' cross examination of the Rev. Dr. Lochman and Judge Gloninger, who drew the will, and who were examined in chief by the plaintiffs in error, who spoke of the knowledge of Michael Rambler, and testified to his capacity; a string of very extraordinary questions were put to them, which were objected to, the objection overruled;- and exception taken. These witnesses had given an opinion of the capacity of this man, founded on facts known to them, and conduct within their own observation. And they are called on to say what their opinion would be in a different state of affairs.
These questions were ensnaring, and to.which the witnesses themselves might justly have excepted; they drew their opinions from their own knowledge and observation, not from the knowledge and observation of others. They gave the opinion and the reasons fo'r the opinion on oath. They were not bound to give an opinion, on an assumed statement of facts, or facts sworn to by other witnesses; but this evidence the plaintiffs in error were right in objecting to, although the witnesses might be willing to answer the questions. Opiniom is no evidence, without assigning the reason of such opinion; now the witnesses had already given the opinion, and the facts on which they founded it; the jury were to judge of the correctness of that, opinion from the facts and reasons stated by the witnesses. But the witnesses’ opinion of the cápacity of a man must not be founded on the hearsay of others, or the oath of. others. As well might the defendants in error called for the opinion of any bye-stander, who had heard the evidence given by them of the state of *95 the man’s mind, and asked him what he thought of the capacity of Michael Rambler. With the same' propriety, might have called in every man in Lebanon, and enquired of him, what think you of Michael Rambler’s capacity to make a will, after the proof we have here given. So the’ devisees might have enquired of every man they could see in' Court we have proved ce'rtain ■ facts, do you not think our testator had sense enough to make a will?-' To'give such latitud,e as was allowed in thiscase, to'a cross examination, would be trying a cause, not by the evidence of facts, and opinions formed by the witnesses, .from their own'Observation and knowledge, but would be trying it on opinions founded on hypothesis and facts stated by others, unknown to the witnesses, and altogether.inconsistent with their knowledge, and with the knowledge to which they had testified. . Ask opinion of a witness, as was here done—if you knew Michael Rambler neither knew the value of inonéy or property, would you think that he was capable of making a will' ? The answer- would be, I think not. Ask him again if you knew Michael Rambler had sense enough, and was selected- to he an elder in the church, and .had as much sense as half the farmers in the country, would you think, him capable of making a will? The answer would be, I think he would. Does such question and answer deserve the name of evidence? Does it demonstrate the matter in iss.ue—the capacity of Michael Rambler ? I thjnk it ■ does not; it might perplex—but neVer would enlighten the jury.
I am therefore of opinion there was error in this.. It requires not the understanding of a Locke or a Newton, to make a will; there is no'standard by which the.understanding is to be weighed, but one—and that is—Has the party such a portion of understanding as would enable him to do any binding act i
The last exception is to the* charge of the Court; the Court decided,, that after the plaintiff has obtained a judgment in ejectment, he can sustain a new ejectment against the same parties for the same land without having, gone into possession, or suing out a writ of possession, or using any means whatever to enforce the first judgment.
If the action of ejectment, were for the recovery of damages for the entry and continuance of possession, it would seem to toe that this decision would be erroneous, and that *96 the party might avail himself of it, at a proper stage of the cause. For a recovery in trespass without execution is a bar ; but thé damages are. in ejectment nominal, and I do not know that in an action for mesne, profits, there could be a recovery beyond the time of judgmént. If it was trespass, the former recovery must havebeen pleaded; but in ejectment on the general issue, perhaps every thing might be given in. evidence to bar the plaintiff’s recovery, . This would present a difficulty, and where the first recovery was for the whole land for which the second ejectment was brought, the defendant who was willing to surrender the land, might be unnecessarily exposed to the costs of a new ejectment. In such case I think the Court could grant relief in a summary manner on motion, for they possess the power to alter the practice and institute any new rule in the action of ejectment, which they may deem beneficial ,not inconsistent with legislative provisions. 4 Dali. 144. Courts have exercised a similar power; for when an ejectment had been brought and was depending in the Court of Common Pleas, and another brought in the King’s Bench, the latter was staid, till the' former was discontinued and decided, Andr. 297, and if a party would harass a defendant by double ejectment, the defendant would be relieved on motion. When such a case occurs, the Court would exercise their own discretion, in granting relief on motion, but it does not occur here; for here the plaintiffs only recovered a moiety, and if the defendants did not intend to contest his right, to the moiety, they might have so entered their defence ; for by the Act of 21st of March, 1806, regulating proceedings in ejectment, it is provided that the defendant shall enter his defence for the whole or any part, and thereupon issue shall be joined. They have taken defence for the whole, issue was joined on the whole, and they come too late on the trial of this issue, to say we admit your right to the possession of the part recovered. This from the nature of the claim they never intended to do. They claimed the whole under the will, and the issue in substance was on the validity of the will. There was therefore no error in the charge, in this respect.
Judgment reversed.