The opinion of the court was, delivered by
Txlghman, C. J.
This action was tried in the Court of Common Pleas, of York county, on an issue directed by the Register’s Court, to decide on the validity of a writing, exhibited as the last-will and testament of Peter Eipe, deceased. On the trial of the cause, the counsel for the plaintiff proposed to ask the following question of MichaelLeib, a witness produced by him, viz. “ Whether from your actual knowledge of Peter Eipe, do you consider him as fit or unfit to make a will?” The counsel for the defendant objected to this as a leading question, and upon the Courts’ permitting it to be put, excepted to their opinion. In the examination of a witness, the propriety of permitting certain questions to be asked, depends so much on circumstances which occur during the trial, that a Court of Error, should be extremely cautious in reversing a judgment for any supposed mistake in deciding on that subject. In general, leading questions should not be put. But there are occasions, when witnesses display such disingenuity and perverseness, that it is necessary to probe them by leading questions. As to the question now objected to, I cannot say, that I'think it subject to the imputation of a leading question. It is one that is *144 generally proposed in such cases, and from the manner of asking it, I do not see how the witness could understand that the plaintiff wished him to answer it in one way rather than another. To be sure, any witness of common sense, must know, that his delivering his opinion in favour of the testator’s fitness to make a will, must have a tendency to establish it in the minds of the jury. But he would know this from the nature of the thing, and not from the manner of proposing the question. The plaintiff had a right to the witnesses’s opinion, and it would be difficult to ask it in a manner less exceptionable. I think there was no error, therefore, in permitting the question to be put.
But the opinion of the court, in their charge to the jury, on the merits of the case, is what is principally complained of. The merits of the case, on the part of the defendant, rested on a change of circumstances after the making of the will, so great, that in the opinion of the defendant’s counsel, they amounted to an implied revocation of the whole will. The testator had two children, a son and a daughter. When he made his will, he had two tracts of land, supposed to be nearly equal in value, a,nd some personal estate, the amount of which is not exactly ascertained. He devised one tract of land to his son, and the other to the family of his daughter, and gave a legacy of 400 pounds to a bastard child of his daughter. The residue of his estate he gave, one half to his son, and the other half to the family of his daughter. After the making of his will, he sold the land which he had devised to his daughter’s family, and incurred debts on judgment, which swept away that which was devised to his son, and at the time of his death, his estate was so much impaired, that it is supposed there was not more than enough, after satisfying his creditors, to pay the legacy left to his bastard grandchild. This is certainly a great change of circumstances. But is it sufficient to afford a well grounded presumption, that the testator intended to revoke his will? He knew that his will was in existence — he knew that he had sold one tract of land, and incurred a debt which would swallow up the other. Yet he made no alteration of his will, but suffered it to remain uncancelled. Were I permitted to conjecture, I should suppose that he had fallen into bad' habits, and considering his situation desperate, thought his will a matter of no importance; or, having devised the residue to his children, he might have thought there would be enough left, after paym.ent of debts, to place his son and daughter, and the bastard child of his daughter, on an equal footing. It is not probable that he had an accurate knowledge of his affairs. There is one case, and only one, in which it has hitherto been thought proper to decide, that the revocation of a will might be implied from an alteration of circumstances, and that is, where the testator married, and had a child, subsequent to the making of his will. But both circumstances must occur. Neither marriage, nor the birth of a child, singly, are sufficient. And indeed the courts seem to have found *145 considerable difficulty in assigning a reason for holding an implied revocation, even in the case I have mentioned. For some of the judges say, that it is a .condition annexed to a will, that if the testator marries, and has issue, the will shall be null. But this certainly is a very forced construction. For why should a condition of that kind be annexed to an instrument, which the testator might always revoke, at pleasure? The danger of this principle of implied revocation is very great, and that is the reason, why although very strong eases of hardship have occurred, the judges have never ventured to advance beyond that one step which they have taken. They have been afraid to imply a revocation, where a married man devised away his whole estate to a relation, and died, ignorant of the pregnancy of his wife, in consequence of which the posthumous child was left destitute. We have the less reason to resort to implied revocations, as our legislature have provided for the case of subsequent marriage or children, by the act of 19th April, 1794. As to alterations in a man’s propertysuch as have occurred in the ease before us, they have never yet been thought to afford sufficient presumption for an implied revocation. The civil law, from' which this doctrine is borrowed, confines it to alterations in the family of the testator. Were we. to extend it, so as to inquire into the circumstances of a man’s estate, at the time of making his will, and of his death, we should find innumerable instances in which the alteration has been so great, that a prudent man would have altered his will, and part of his family has been reduced to great distress by his not doing it. But it is better that individuals should be distressed, than the freedom of disposition by last will, invaded; that freedom which is one of the greatest excitements to enterprise and industry. Once establish the judicial habit of examining the situation of a man’s fortune or family, and revoking his will, because he has made an absurd, or an inhuman disposition of his property, or because we may suppose he was ignorant of the state of his affairs, or of the law, and no man’s , will is safe. Upon the whole, then, I will not say that it is impossible for a new case to occur, to which it would be improper to apply the principle of implied revocation, but I am well satisfied that we ought not to apply it to the case now under consideration. I am of opinion, therefore, that the charge of the President of the Court of Common Pleas, was right, and the judgment should be affirmed.
Judgment affirmed.