DEWITT *against* BARLEY and SCHOONMAKER.

9  371
168 ¹ 34

The opinions of witnesses, other than those who are specially qualified by scientific knowledge to judge of such matters, are not competent evidence of the soundness or unsoundness of mind of a testator or grantor at the time of executing a will or deed.

The case of subscribing witnesses to a will or deed forms an exception to this rule, their opinions being always competent.

THIS is an action to recover real property, with damages for the withholding thereof. The plaintiff sought to recover twelve hundred and seventy-seven acres of land situated in the county of Ulster. No question arose upon the pleadings. The trial took place at the Ulster circuit on the 8th day of May, 1851, before Mr. Justice HARRIS. Both parties claimed title under Henry Dewitt, who died on the 7th day of May, 1850. By his will, which was duly executed on

the 2d day of May, 1837, he devised to the plaintiff a lot of land of which the premises in question are a part. After giving the will in evidence (the defendants having admitted themselves in possession), the plaintiff rested.

The defendants gave in evidence a deed from the said Henry Dewitt and his wife to John H. Dewitt, dated June 18, 1849, embracing the premises in question, and which expressed a consideration of $500; and also a deed from the said John H. Dewitt and his wife to the defendant Peter P. Schoonmaker, dated December 12, 1849, both of which deeds had been duly acknowledged and recorded. The defendants having rested, the plaintiff undertook to show that Henry Dewitt when he executed the deed to John H. Dewitt was incompetent from age and want of memory and understanding to execute a conveyance. He also insisted that the deed had been procured by undue influence over the grantor, exerted by his wife, the mother of the grantee. The plaintiff and John H. Dewitt were both sons of Henry Dewitt. The latter was his sole issue by his second wife. At the time of the execution of the conveyance to John H. Dewitt, Henry Dewitt was eighty-eight years of age.

The plaintiff called *John J. Schuyler* as a witness, who testified that he had known Henry Dewitt twenty years, and had observed a change in him during the latter part of his life. The plaintiff's counsel inquired in what the change consisted. The defendants' counsel objected to the question, but the judge permitted it to be asked, and the defendants' counsel excepted. The witness did not answer the question, but stated simply that the change took place in 1849. The witness then related a conversation which he had with Henry Dewitt in July, 1849, in which, according to the witness, he showed a striking want of recollection. The plaintiff's counsel proposed to prove what the wife of Dewitt had said respecting his mental condition, the old gentleman being present, and his reply thereto or conduct thereafter. This was objected to, as the declaration of a third

person, but was admitted by the judge, and an exception was taken by the defendants' counsel. The witness testified that Mrs. Dewitt said he was a perfect child, and had lost all recollection, and that there was no use to talk to him; that this was said in Dewitt's presence and he made no reply. Similar evidence was given upon the examination of another witness, after a like objection and exception.

The plaintiff next called *Israel Smith*, who testified that he lived upon Dewitt's farm, and worked for him, and boarded at his house the principal part of the time for about four years, ending in 1847; that he appeared to fail the last year; that he gave up his business and exhibited a failure of memory; that he, the witness, saw him once before he died. The plaintiff's counsel offered to prove the conversation he had with him at that time, to show the state of his mental faculties. This was objected to, on the ground that it occurred too long after the execution of the deed; but it was admitted, and there was an exception. The amount of the interview was, that the old gentleman did not know the witness until his wife mentioned who he was.

The plaintiff's counsel inquired, with reference to the same period of time, whether Mr. Dewitt was capable of managing his affairs and business. This inquiry was objected to on the ground that it called for the opinion of the witness; but it was admitted and an exception was taken. The witness thought he was not capable of doing any business that year.

When the plaintiff rested the defendants' counsel moved for a nonsuit, insisting that sufficient had not been proved to submit to the jury to impeach the validity of the deed; but the motion was denied and the defendant excepted. Besides the testimony which has been mentioned, several witnesses had spoken of a great loss of memory on the part of Dewitt about the time the conveyance was made. One witness said he had entirely lost his recollection; another that he was entirely incapable of doing any business and had no judgment; that he did not know the value of property.

Dewitt *against* Barley and Schoonmaker.

The defendant then gave evidence touching the capacity of Mr. Dewitt about the time the deed was given and of his conversations connected with that transaction, with a view to show the possession of capacity and intelligence on his part. The plaintiff afterwards called other witnesses, and upon the examination of one of them, who was a son of the plaintiff and had lived in the family of Henry Dewitt, his grandfather, he was permitted, against the objection of the defendants' counsel, to ask the witness whether, from what he had seen and the facts within his knowledge, the old man had capacity to comprehend and transact business. There was an exception to the ruling and the witness answered that he had not such capacity.

The charge of the judge is not given in the case. The verdict was for the plaintiff. The judgment was affirmed at the general term, on which occasion the opinion was given by Justice PARKER. (13 *Barb.*, 550.)

*Charles R. Westbrook* for the appellants.

*E. Cooke* for the respondent.

MASON, J. The only question necessary to be considered in this case is, whether the opinions of witnesses who are not medical men and are not claimed to be experts, are admissible as evidence on the question of the capacity of the grantor of lands, when given in connection with the facts and circumstances relied on to prove the incapacity, and where the witnesses have had personal acquaintance and intercourse with the party, and state the facts on which the opinion is based. The general rule upon this subject is well stated in Shelford's admirable treatise concerning lunatics. Speaking in regard to this matter, he says: "On inquiries upon this subject the same general rules of evidence are to be observed as in other trials. It is the correct practice where the question turns on the sanity of a party, to give particular

acts of madness in evidence, and not general evidence that the party is insane."

The general rule that witnesses must speak to facts, and that mere opinions are not admissible, is too well settled to admit of discussion. (1 *Phil. Ev.*, 290; 1 *Greenl. Ev.*, § 450; 7 *Wend.*, 72; 17 *Wend.*, 136; 4 *Denio*, 318, 370; 19 *Wend.*, 569; 2 *Wend.*, 668; 5 *Hill*, 603; 4 *Barb.*, 236, 261, 614; 2 *Comst.*, 514; 1 *Barb.*, 408; *Best's Prin. of Ev.*, 384.) The reason of the rule is well stated by Best. He says: " The use of witnesses being to inform the tribunal of facts, their opinions are not in general receivable as evidence. This rule (he adds) is necessary to prevent the other rules of evidence from being practically nullified. Vain would it be for the law to constitute the jury triers of disputed facts, to reject derivative evidence when original proof is withheld, or declare that a party is not to be prejudiced by words or acts of others with whom he is unconnected, if they might be swayed by opinions relative to those facts expressed by persons who come before them in the character of witnesses. *If those opinions are formed either on no evidence, or on illegal evidence, they ought not to be listened to; if founded on legal evidence, that evidence ought to be laid before the jury, whom the law presumes to be at least as well capable as the witness of drawing from them any inferences which justice may require.*" (*Best's Prin. Ev.*, 384, § 344.)

This rule, however, like most other general rules, has its exceptions; " being based upon the presumption that the tribunal before which the evidence is given is as capable of forming a judgment on the facts as the witness. Where the circumstances are such as to rebut this presumption, the rule itself naturally ceases; ' *cessante ratione legis cessat et ipsa lex.*' " (*Best's Prin. of Ev.*, 386.) Hence, on questions of science, skill, trade or others of the like kind, persons of skill, sometimes called experts, are permitted to give their opinions. (1 *Greenl. Ev.*, § 440; *Best's Prin. of Ev.*, 386, § 346.) This evidence is admitted upon the supposition that

the questions involve matters which lie beyond the scope of the observation, knowledge and experience of men in general; and that consequently the jury could not be presumed competent to arrive at a proper determination by the unaided exercise of their judgment on the facts. (7 *Wend.*, 72, 98; 17 *Wend.*, 136, 162, 163; 4 *Denio*, 318, 370; 7 *Metc.*, 504, 505; 7 *Cush.*, 319; *Best's Prin. Ev.*, 386, § 346; *Greenl. Ev.*, § 440.) Within this principle the opinions of medical men are daily admitted as to the causes of disease or of death, or the consequences of wounds; and as to the sane or insane state of a person's mind, &c. (1 *Greenl. Ev.*, § 440.) And upon the same principles, seal engravers may be called upon to give their opinion upon an impression, whether it was made from an original seal, or an impression; and so the opinion of an artist in painting, is evidence of the genuineness of a picture; a ship-builder's opinion, as to the seaworthiness of a ship; and there is a large class of other cases in which experts possess a degree of knowledge in science, skill, art and trade, where their opinions are deemed necessary to enlighten a jury upon the particular subject under investigation. (1 *Greenl. Ev.*, § 440; *Best's Prin. of Ev.*, 386, 387, § 346.) The opinions of laymen in general, however, can never be allowed in such cases upon any such principle. The very reason of the rule forbids it. As regards these, the law presumes the jury to be as capable as they are of drawing correct conclusions and inferences from the facts. They are not experts, and, as we have already seen, the law only allows those to give opinions who have peculiar sources of knowledge to guide them on those subjects, which are not presumed to be equally within the reach of the jury. (4 *Denio*, 373.)

There is another class of exceptions to the general rule that opinions are not evidence, to be found in cases where the judgment or opinion of the witness, on some matter material to be considered by the tribunal that is ultimately to decide, is formed on facts, which, from their nature or

Dewitt *against* Barley and Schoonmaker.

number, it would be impossible to bring before it. This exception is recognized in the elementary books and is illustrated by the cases. It is recognized and stated in *Best's Prin. of Ev.*, 391, § 349, and this species of evidence is admitted upon the ground that positive and direct evidence is wholly unattainable, and that a resort to opinions furnishes the only available means of arriving at the truth in such cases. (*Best's Prin. of Ev.*, § 349; *Fry* v. *Gathercole*, 13 *Jur.*, 542.) Opinions are admitted within this rule upon questions of identity of persons and property, and of handwriting. (*Best's Prin. of Ev.*, 168, 391, §§ 210 *to* 215, 349.) It is upon this principle, if at all, that the opinions of laymen can be admitted upon a question of the mental capacity of a party in a case like the one under consideration; and it is upon this principle that the court below admitted such evidence in this case. The question is certainly an important one in the administration of justice, and is one upon which judges and courts have very much differed. The precise question has never been adjudicated in this court, and it may be reasonably expected therefore that we should bestow some attention to it, as our decision may be expected to constitute the law of this court in regard to this species of evidence.

I propose to consider the question first, upon authority; and secondly, upon principle.

I have examined with great care the reports of Westminster Hall, within my reach, and have not been able to find any reported case allowing such evidence in any of the English common law courts. The ecclesiastical courts, in the exercise of their exclusive jurisdiction in cases of wills, have admitted such evidence.

It is proper to say, in regard to the decisions of the ecclesiastical courts, that they have established very loose rules of evidence, and have departed widely in many cases from the well settled rules of the common law. Fortunately, we are not more in the habit than the English common law

courts of looking into the decisions of the ecclesiastical courts to ascertain the common law rules of evidence. The reasons why the common law courts should not do so, were well stated in the House of Lords, by COLERIDGE, Justice, in the case of *Wright* v. *Tatham* (5 *Clark & Fin.*, 692), where the authority of the ecclesiastical courts was very urgently pressed, to procure the admission of certain letters written to the testator by third persons and found many years after their date among his papers. He says: " But we are pressed with the authority of the ecclesiastical courts— that this is a subject over which they have jurisdiction, and with which they are in practice very conversant. I agree in the great convenience of having but one rule of evidence in every court in which the same subject matter comes for decision ; and filled as the judgment seats in those courts are and have been for many years, their decisions will be received by no one with more respect than myself. I do not, therefore, presume to question the decisions referred to ; but when a rule of evidence is sought to be imported thence into our courts of common law, I remember that rules of evidence are technical ; framed, and wisely framed, with reference to the tribunal in which they are to be applied ; and that what may be a safe rule where the same judge decides both the law and the fact, may be dangerous when the fact is entrusted to the jury." He adds: " Other acknowledged differences, as to the rules of evidence, prevailed between the two courts." Justice WILLIAMS, in the same case, at page 701, says: " I beg to express my entire concurrence with the opinion of my learned brothers (upon this point nearly if not wholly unanimous), that the course and practice of the ecclesiastical courts furnish no rule for our adoption upon questions of this kind." He proceeds to consider the question, and concludes by saying: " Whatever may be said, therefore, of the propriety of the same rule prevailing universally, I do not think that the decisions of the ecclesiastical courts

Dewitt *against* Barley and Schoonmaker.

amount to an authority in a court avowedly acting upon the rules and principles of the common law." (*Pages* 701, 702.) PATTESON, Justice, at page 719, says: "I cannot consider these cases as binding authority even in the courts of common law in Westminster Hall, much less in your lordships' house." See opinion of BOSANQUET, J., at page 726, to the same effect; LITTLEDALE, also, pages 748, 749. Lord BROUGHAM expresses the same opinion, at pages 768, 769, where he says: "Then it is said that in the ecclesiastical courts this evidence is admissible." He adds: "When that argument was used, I could not help asking whether the question of what was admissible in the common law courts was to be decided by what was admissible in the courts Christian; and it was felt to be impossible to contend that such should be the rule. Indeed, if such could be the rule, we should admit, what we certainly never do admit, evidence of hearsay three feet deep, as for instance, on the question of the force used by a husband in compelling a wife to make a will, the courts Christian let in evidence to show the general treatment of the wife by the husband in order to show that he does or does not generally exercise coercion over her." In the ecclesiastical courts, where questions of sanity and insanity, in cases of wills, are of very frequent occurrence, they allow the proctor to interpose allegations, and admit these allegations to proof, that the general appearance, manners, conduct and deportment of the testator denoted unsound intellect—that he was treated and regarded by his friends and acquaintances as one not in his right senses; and, on the other hand, to receive pleas and proofs that he was regarded by his friends and acquaintances as sane, and that his general deportment was rational and proper. (*Wheeler* v. *Betford*, 3 *Hagg.*, 574; 2 *Iredell*, 82.) In those courts they also admit proof of handwriting by comparison, by those who have never seen the party write (8 *Ves.*, 474; *The King* v. *Cator*, 4 *Esp.*, 117), which is not admitted by the common law courts in

England or generally in this country. I have consulted carefully the English elementary treatises upon evidence, and have not been able to find any warrant for the admission of such evidence in any of them. And BEST, in his admirable treatise, while he has stated the principle upon which it is claimed that this evidence is admissible, does not recognize it as falling within the rule. (*Best's Prin. of Ev.*, § 349.) The American courts have seemed more inclined to admit this species of evidence than the English, and it cannot be denied that there is much authority here for admitting it. It is admitted in Pennsylvania, Georgia, Alabama, Maryland, Ohio, Connecticut, Vermont, Tennessee and North Carolina. (7 *Verm.*, 161; 17 *id.*, 499; 4 *Conn.* 203; 7 *Serg. & Rawle*, 90; 17 *id.*, 14; 9 *Yerg.*, 329; 12 *Ohio.*, 483; 2 *Ired. Law R.*, 78; 6 *Geo.*, 324; 13 *Ala.*, 68; 7 *Gill*, 28, 29, 30.) These cases have many of them been decided upon the strength of four Massachusetts cases, which have been very much misapplied; and the only authorities cited for the decisions in the other states, are from the English ecclesiastical courts; which, as we have already seen, cannot be regarded as authority upon questions of evidence in the common law courts.

There is one case, however, which may be said to form an exception to this remark, and that is the case of *Clary* v. *Clary* (2 *Ired. Law R.*, 78), where, after citing the ecclesiastical reports as authority, the court have sought at great length, and with greater ability than success, to vindicate the rule admitting such evidence upon principle. The first of the Massachusetts cases to which I have referred is that of *Poole* v. *Richardson* (3 *Mass.*, 330). This case is an authority against the admission of such evidence, instead of in favor of it. The case decides that the subscribing witnesses to a will may be inquired of generally as to the judgment they formed of the soundness of the testator's mind at the time of the execution of the will, upon the ground that the law had placed them around the testator

to try, judge and determine whether he is competent to execute it. But as to the other witnesses, they were allowed only to testify to the appearance of the testator, and to any particular facts from which the state of his mind might be inferred; but not to testify merely their opinion or judgment. This is certainly sound; for it is well settled both upon authority and principle that the subscribing witnesses to a will may give their opinions upon the capacity of the testator *ex necessitate*. The next case is that that of *Buckminster* v. *Perry* (4 *Mass.*, 594), where no objection was taken to the evidence, and where it does not appear from the report of the case whether the witnesses were medical men or not, and where the only evidence they gave, so far as the report of the case shows, was, that the testator was much broken and very forgetful about the time the will was made, and stated particularly several slight instances of a want of recollection. They gave no opinions, and the case is no authority for the admission of such evidence. The next case is that of *Hathorn* v. *King* (8 *Mass.*, 371). All that this case decides is, that the attending physicians may be inquired of whether, from the circumstances of the patient and the symptoms they observed, they were capable of forming an opinion of the soundness of the testatrix's mind; and if so, whether from thence they concluded her mind was sound or unsound; and in either case that they must state the circumstances or symptoms from which they draw their conclusions. The next case is *Dickinson* v. *Barber* (9 *Mass.*, 225), which was an action of slander, and the defence was insanity; and to prove the insanity, the defendant offered the depositions of two physicians, who testified that in their opinion the defendant had been insane from the time of the speaking of the words. The court held the depositions inadmissible, because the witnesses did not state any facts on which they founded their opinions. I have given a fair and full statement of the whole length and breadth of these Massachu-

setts cases, and yet, as strange as it may seem, they have been made the basis and authority for admitting this species of evidence in Connecticut, in Tennessee, and in Ohio (4 *Conn.*, 208, 209; 9 *Yerg.*, 329; 12 *Ohio*, 493), and I believe in some of the other states.

If any doubts can possibly rest upon the doctrine of the Massachusetts courts in regard to this species of evidence from the cases above referred to, which it does not seem to me there can, it has certainly been removed by their later decisions. In the case of *Needham* v. *Ide* (5 *Pick.*, 510, 511), which was an appeal from a decree of the judge of probate approving of the will of Samuel Needham, the principal question submitted to the jury was, whether the testator was of sane mind at the time of the execution of the will. The three subscribing witnesses testified that in their opinion he was of sane mind. Some of the witnesses called by the appellant, without being asked their opinions, in the course of their testimony stated their opinion of the insanity of the testator and no objections were taken. Judge MORTON, in submitting the case to the jury, stated that the subscribing witnesses being with the testator when he signed the will and required to notice the state of his mind, might lawfully give their opinions of his sanity, but that the mere opinions of other witnesses were not competent evidence, and were not entitled to any weight, further than they were supported by the facts and circumstances proved. This charge was excepted to, and the court in bank sustained the charge. The opinions in that case were thrown in by the witnesses without being inquired of by either party, and it seems without objection, and still the court charged the jury, in the first place, that they were not competent evidence; and in the second place, although they were brought into the case in the manner above described, still they were not entitled to any weight farther than they were supported by the facts and circumstances proved on the trial. (7 *Metc.*, 504, 505; 7 *Cush.*

321.) Until the decision of *Culver* v. *Haslam* (7 *Barb.*, 314), in the supreme court, no case is to be found in this state favoring the admission of such evidence; and when that decision was given to the public, the almost unanimous opinion of the bar was that it introduced a new rule of evidence in this state, and such was the general opinion of the judges of the supreme court with whom I have conversed. Up to the decision of *Culver* v. *Haslam*, opinions of experts were allowed on questions of science, skill and trade, upon the principle that the jury have not the same knowledge upon these matters as such witnesses, and that they need to be enlightened by the opinions of men possessing superior knowledge in regard to them; and so the opinions of witnesses have been allowed upon questions of identity of persons and property, and of handwriting. (7 *Wend.*, .98; 17 *Wend.*, 136; 19 *Wend.*, 569; 24 *Wend.*, 668; 5 *Hill*, 603; 4 *Denio*, 370.) But the rule was never extended to the admission of the opinions of laymen upon questions of mental capacity. (*Sears* v. *Shafer*, 1 *Barb.*, 412.) The court below seem to have regarded the case of *Culver* v. *Haslam* as authority which should control their decision, being in the same court and upon the same question. It is sufficient for my present purpose to say, that in this court it is not controlling authority if the principle upon which it is decided is unsound. It is proper also to say in regard to that case, that it is very much shaken as authority in any court by the very able dissenting opinion of Justice HAND. I think, also, that the learned judge who delivered the prevailing opinion has adopted the decisions of the ecclesiastical courts in England, and of the American cases which have followed them, without sufficient consideration of the principle upon which those decisions rested.

It remains to be considered whether the principles upon which such evidence has been admitted in the ecclesiastical courts, and in the American courts which have adopted their

rule, are sound. Such evidence is admitted under that exception to the general rule excluding opinions, which admits them where the facts are such that from their nature or number it would be impossible for the witness to bring them before the jury. It is admitted upon the ground that positive and direct testimony is wholly unattainable to accomplish the purposes of evidence — that there is such an inability in witnesses generally, to detail the facts which furnish the evidence of insanity to their own minds, that their opinions furnish the only available evidence of the truth in such cases. The case is held to be analogous to that of personal identity and handwriting, where the rule is well settled that opinions are admissibe within the principle above stated. The cases are widely different. Where a witness deposes to personal identity, or to handwriting, he states a conclusion of the mind, which is but an opinion, we concede, but it is an opinion founded on the sense of sight alone, and where the reasoning powers are very little taxed, not much more so than in giving the color of a horse. The pronouncing an opinion upon the question of a man's sanity or insanity is a very different thing. It requires in many cases the most comprehensive knowlede of the various mental phenomena, and especially of those which characterize disorded states of the mind. It seems to me that the principle upon which the opinions of medical or scientific witnesses are admitted precludes the idea that laymen in general are competent to give opinions in such cases. That principle is, that the phenomena which indicate unsoundness of mind, in many cases, lie so much beyond the scope of observation and experience of ordinary men, that twelve jurors, although having before them all the facts from which the witnesses are to form their opinions, may not arrive at a correct conclusion from those facts, without the aid of opinions from men of greater experience and more extensive knowledge upon that particular subject. The reasons which lead to a distrust of the unaided conclusions of the jury in

such cases, bear with equal if not with greater force against the opinions of ordinary witnesses. Thus the very authorities which allow the opinions of witnesses to be given, upon the assumed ground that the facts upon which they are based cannot be proved, declare the opinions to be entitled to little or no regard unless supported by the facts. This qualification of the rule amounts to a practical rejection of the opinions, for what is disregarded is practically rejected. I have examined most of the American cases and several of those in the ecclesiastical courts admitting such evidence, and the rule to be extracted from them all is, that after the witness has stated the facts and circumstances, then his conclusion or opinion derived from and resting upon them may be given. This is recognized as the extent of the rule in the opinion in this case delivered in the court below. It is there said that "the witness, after stating the facts and circumstances, may give his opinion derived from them and resting upon them for the consideration of the jury, though the opinion may have little or no weight, unless appearing to be supported by the facts and circumstances proved." All the cases agree that the opinions of lay witnesses, based upon facts detailed by other witnesses, cannot be received.

These absurdities, therefore, result from the decisions admitting this species of evidence. Recognizing the general rule that opinions are not evidence, they are admitted in these cases as an exception to that rule, on the ground of the inability of the witnesses to communicate the facts and circumstances upon which such opinions are founded, and yet the witnesses are required to state those facts and circumstances before giving their opinions. The opinions are admitted also on the ground that the jurors may not be able without them to draw correct conclusions from the facts and circumstances, and the jurors are then instructed to give the opinions no weight "unless appearing to be supported by the facts and circumstances." And again, the

opinions of witnesses possessing skill and science are admitted from a necessity based upon the assumed unskilfulness of the jurors, when the opinions of witnesses equally unskilful with themselves are allowed to be submitted to them as evidence to guide their judgment.

A rule so fraught with contradictions ought to be more strongly fortified by reason and authority than I find this to be, before giving it a place among our established principles of common law. It seems to me clear that when the matter is of such a nature that it may be presumed to be within the experience of men of common education, moving in the ordinary walks of life, there is no room for the evidence of opinion ; that it is for the jury to draw the inference. (7 *Cush.*, 321 ; *Best's Prin. of Ev.*, § 349.) The very reason upon which medical opinion is allowed in such cases forbids the idea that the opinions of laymen in general can be received.

The rule which admits the opinions of laymen in such cases can have no foundation upon any principle known to the law of evidence, if the opinion be limited, as it has been in all of the adjudged cases thus far, to stating a conclusion or opinion of the witness upon the facts detailed by himself. If we are prepared to go the whole length of the rule which obtains upon questions of identity of persons and property, and of the proof of handwriting, and say that the opinions of the witnesses in such cases shall be the controlling evidence to govern the jury, because of the inability of the witnesses from the nature and character of the facts to properly bring them before the jury, then the rule may be said to be based upon principle. This rule makes the opinion of the witness the evidence, because the facts are of such character that they cannot be brought before the jury. The rule, therefore, in such cases, is founded in necessity, and the opinion must be the controlling evidence because of such necessity. It is sufficient to say that no court has ever yet given such effect to the mere

opinions of laymen in cases of this kind, or placed the admission of such evidence upon this broad principle. Nor can the rule above stated with any propriety be applied to a case like the present. There is no such insuperable difficulty in describing the mental manifestations which are relied upon in any case to prove insanity as there is in the cases of personal identity and handwriting. Those manifestations which usually attend a sound mind are made familiar to all by the intercourse of all classes of men, and the evidences or mental manifestations which characterize insanity, so far as they fall under the observation of men generally, are of that character which witnesses can describe or relate. They generally consist in acts or words, and frequently in both combined, and there is no more difficulty in describing and relating them to a jury than there is in many other cases where the witness is required to state the facts and circumstances, and is not permitted to give his opinion upon the conclusion to which they lead.

It has been asserted that the only difference between sane and insane men, is, that the former conceal their thoughts while the latter give them utterance. This distinction, although not wholly accurate, is far less erroneous than might generally be supposed; and is not entirely destitute of analogy to the remark of TALLEYRAND, that, " *language was invented for the purpose of concealing thought.*" Whatever may be said in regard to sane men, the language and the conduct of the insane are most generally a fair index to the mind. This is certainly so in all that class of cases where the opinions of laymen could be of any practical utility.

The conclusion I have arrived at is, that this species of evidence cannot be admitted upon any principle known to the law of evidence ; that the common law courts in England do not admit it, nor do any of the English elementary treatises upon evidence recognize such a rule (1 *Phil. Ev.*, 290 ; 1 *Stark. Ev.*, 54 ; 3 *id.*, 1707); that the introduction

of the rule into so many of the American states is the result of a misapplication of the Massachusetts cases, and of following the decisions of the ecclesiastical courts in England without sufficiently considering the reasons upon which those decisions rested ; that the supreme court of this state have fallen into the same error in the very recent case of *Culver* v. *Haslam*.

The judgment of the supreme court should be reversed, and a new trial granted, with costs to abide event.

RUGGLES, Ch. J., and JOHNSON, TAGGART and GARDINER, Js., concurred in the foregoing opinion.

DENIO, J., (dissenting.) The principle is well settled that witnesses cannot in general be allowed to testify to opinions, as distinguished from facts. The theory of jury trials requires that the jurors should be informed by the witnesses of the material facts involved in the issue, and then be left to draw their own conclusions from those facts. (*Lamoure* v. *Caryl*, 4 *Denio*, 370 ; *Fish* v. *Dodge*, *id.*, 311, 318 ; *Norman* v. *Wells*, 17 *Wend.*, 136, 161 ; *The People* v. *Rector*, 19 *Wend.*, 569, 576.) But the rule is not universal. It is only where, from the nature of the inquiry, the jury are as competent to form a judgment from facts submitted to them, as a witness, that opinions are excluded. (*Lamoure* v. *Caryl*, *sup.*) Hence, a well established exception exists in regard to witnesses skilled in any art or science, where the inquiry requires the exercise of such skill. (*Jefferson Ins. Co.* v. *Cotheal*, 7 *Wend.*, 78.) So where the value of property is in question, witnesses are allowed to state their judgment. (*Joy* v. *Hopkins*, 5 *Denio*, 84.) So also, the opinions of witnesses are received where it becomes material to show the state of the affections of a party. In *McKee* v. *Nelson* (4 *Cow.*, 355), which was an action for the breach of a promise of marriage, the plaintiff's counsel was permitted to inquire of witnesses who knew the plaintiff and had observed her conduct and deport-

Dewitt *against* Barley and Schoonmaker.

ment during the time the defendant was paying his addresses to her, whether, in their opinion, the plaintiff was sincerely attached to the defendant.   On a motion for a new trial for misdirection, the court held the ruling correct, and remarked that there were a thousand nameless things indicating the existence and degree of such an attachment which language could not specify.   The opinions of witnesses on such a subject, the court say, "must be derived from a series of instances passing under their observation, which yet they never could detail to a jury."   The same principle has been recognized in the English courts.   In *Trelawney* v. *Colman* (2 *Stark.*, 191), in an action for criminal conversation, HOL-ROYD, J., allowed a witness who was accquainted with the plaintiff's wife to state the opinion she had formed during that acquaintance as to her affection for her husband, the plaintiff; and the court refused a rule *nisi* for a new trial.

The difficulty of spreading the whole case before the jury by a detail of the acts and conversation of the party is at least as great where the question relates to his mental capacity, as in the instances referred to:   In a case of doubtful competency, witnesses will ordinarily be produced who knew the individual when in health, who have observed the changes which have since taken place, and have inci-dentally tested his memory and judgment in a great number and variety of instances in the routine of social and domestic life, the particulars of which have been forgotten, though the impression caused by them remains upon the mind of the witness.   Such a witness, if possessed of discrimina-tion and judgment, will usually have formed an opinion of considerable value as to the capacity of the party for doing an act requiring memory and judgment.   But it would scarcely be possible for him to lay before a jury all or the greater part of the circumstances upon which his opinion is based.   The judgment which we form as to the mental condition of an acquaintance depends as much upon his looks and gestures connected with his conversation and

conduct as upon the words and actions themselves, and yet it would be a hopeless task for the most gifted person to clothe in language all the minute particulars, with their necessary accompaniments and qualifications, which have led to the conclusion which he has formed. I am of opinion that the question of testamentary competency, or what is the same thing, of mental capacity to do an act requiring the faculty of judgment and memory, does, upon principle, form a well defined exception to the rule which excludes the mere opinion of a witness; and unless the point has been otherwise settled by adjudications which we are bound to regard, the ruling in this case should be sustained.

In testamentary cases in England I am satisfied that it is the universal practice of the spiritual courts to receive the opinions of witnesses who are acquainted with or have seen and conversed with the alleged testator as to his competency. In *White* v. *Driver* (1 *Phillimore*, 84), which was the case of a contested will, Sir JOHN NICHOLL laid great stress upon, if he did not wholly decide the cause in consequence of, the favorable opinion of a friend of the deceased, and of his clergyman, solicitors, nurses and apothecaries, against pretty strong testimony on the other side. *Kinleside* v. *Harrison* (2 *Phill.*, 449) arose upon the probate of the will and codicils of a person ninety years old. A great number of witnesses were examined upon the question of the capacity of the deceased, who freely gave their opinions upon one side or the other, differing very much in their conclusions. Sir JOHN NICHOLL commenced his elaborate judgment by some remarks upon the difficulty of cases of that nature. " In the first place," he said, " it may be observed that a large portion of evidence to capacity is evidence of mere opinion; and upon matters of opinion mankind differ even to a proverb." Farther on he observed that discrepancy would arise, " first, from the different abilities of witnesses to form such opinions ; secondly, from their

different opportunities of seeing the person; and thirdly, from the different state and condition of the testator's mind at different times. It is certainly true that the study of the human mind is an abstruse science; the different lines and traits of the understanding are matters which attract the notice and consideration of the intelligent. Ignorant persons and enlightened persons will form very different opinions upon subjects of this kind: ignorant persons, servants, and those in their condition, who form their judgments in the conversations of the kitchen circle, are very apt to form erroneous opinions on matters of this sort; and this will be the case even without throwing in the additional ingredient which takes place in those circles, the loose suspicions and prejudices by which their judgments are often biased and carried out of their true course. In the next place, from the different opportunities persons have of judging, they will form different opinions: persons who see a testator only occasionally will form different opinions from those who have better opportunities of judging. We know that little appearances occurring in this way are extremely fallacious, yet we often find occasional observers depose with great confidence. It frequently happens that the most ignorant are the most confident." " This kind of opinion is still more various where the testator's capacity is fluctuating, where he is sometimes better and sometimes worse; and this is generally the case with persons laboring under old age or other infirmities; it is so, even where there is no special attack occasionally operating : accidental cold or other indisposition often renders an old, infirm person worse one day than another. After a good or bad night, a person will be alert or dull : so after a night's sleep a person may be active and capable of considerable exertion even in matters of business, who in the afternoon, when the process of digestion is going on, shall appear drowsy and stupid, and not able to rouse himself into action. The humor of a testator will sometimes make him appear almost fatuous, or induce him to

rouse himself into exertion, as the occasion is either inte-
resting or disagreeable to his inclinations. Now these
different considerations (and they might be much more
spread), while they tend to reconcile the apparent contra-
diction of witnesses, render it necessary for the court to
weigh such evidence with very great attention; to rely but
*little* upon *mere* opinion; to look at the ground upon which
opinions are formed, and to be guided in our judgment by
facts proved and by acts done *rather* than by the judgment
of others." I have referred to these remarks so much at
large, depreciatory though they are of the kind of testimony
in question, in order to show that though opinions are enti-
tled to but little confidence except when connected with and
supported by facts, yet that it was not thought of that they
might be excluded altogether as incompetent. To show that
opinions are habitually received and relied on in these courts,
when connected with facts, I may also refer to *Dew* v.
*Clark* ( 3 *Addams*, 79 ); *Cartwright* v. *Cartwright* ( 1 *Phill.*,
90 ); and *Wheeler* v. *Alderson* ( 3 *Hagg.*, 574 ).

The point does not seem to have been distinctly decided
in the courts of this state, if we except a recent case in the
supreme court hereafter noticed. In *Jackson* v. *King* (4 *Cow.*,
217, 218), where a conveyance was attacked for the alleged
incapacity of the grantor, unprofessional witnesses who
were acquainted with him were examined as to their opin-
ions respecting the soundness of his mind, without (so far
as it appears) any objection having been taken. Those who
testified for the plaintiff based their opinions upon specific
facts, which were held by the court not sufficient to warrant
the opinions which they expressed. In *Clark* v. *Fisher* (1
*Paige*, 171), which was an appeal from a decree of the
surrogate admitting a will to probate, testimony of the kind
under consideration had been received. In commenting
upon it, the chancellor, I think, recognizes the rule as con-
tended for by the respondents in this case. He says, in
commenting upon the case, that "the evidence of capa-

Dewitt *against* Barley and Schoonmaker.

city," " in most contested cases, consists in the opinions of witnesses, sometimes with and frequently without the particular facts on which such opinions are founded." After adverting to the unsatisfactory character of opinions generally, he adds: " It is for this reason that opinions of witnesses are never received in evidence when all the facts on which such opinions are founded *can be ascertained and made intelligible* to the court and jury. And where the opinions of witnesses *from the necessity of the case* are received as evidence, the weight of testimony will not depend so much upon the number as upon the intelligence of the witnesses, and their capacity to form correct opinions, their means of information, the unprejudiced state of their minds and the nature of the facts testified to in support of these opinions." What was said by COWEN, J., upon this precise question, in *Norman* v. *Wells* (17 *Wend.*, 163), was merely *obiter*. He remarks that some courts have, upon questions of insanity, " allowed witnesses to throw in their opinions from what they have seen and heard. But (he adds) I always found that such cases were better tried where opinions were kept entirely out of view; and I have *generally* excluded them, except where they came from professional men." This is at most an assertion that the rule in that class of cases was unsettled, and that it depended upon the discretion of the particular judge who tried the cause, which would be a most unsatisfactory state of the law. It is impossible to frame a rule which should admit the intelligent, discriminating and unbiased witnesses who had known the individual intimately in all the phases of his mental history, and exclude those of another character, or whose means of observation were more limited; but it could not be endured that it should be left to the judge as a question of competency, whether a witness offered by a party came up to the standard of intelligence and impartiality.

SEL.—VOL. V. 50

The cases of *Sears* v. *Shafer* (1 *Barb.*, 408) and *Culver* v. *Haslam* (7 *id.*, 314), decided in the supreme court, are too recent to be regarded as binding authority upon this court. In the first of them I do not understand the learned judge to hold that opinions were inadmissible when based upon facts within the witnesses' knowledge. The last mentioned case contains an able examination of the precise . question now under consideration; and the conclusion arrived at by a majority of the court, that the opinion of a witness acquainted with the individual whose capacity is in question, in connection with the facts and circumstances within the knowledge of the witness, is admissible, meets with my entire assent.

It remains to notice the course of adjudication upon this point in the other states of the Union.

In Pennsylvania, the point seems to be settled in the manner we are disposed to decide it. In *Rambler* v. *Tryon* (7 *Serg. & Rawle*, 90), the right of the defendant depended upon the validity of a will, which was impeached by the plaintiff on the ground of the imbecility of mind of the alleged testator; and witnesses who had known him intimately from his childhood to his death were offered to prove certain facts tending to show an extraordinary dullness of understanding, followed up by the opinions of the witnesses, founded on those facts, that he was incapable from defect of understanding to make a will. The court admitted the evidence and the defendant excepted. In reviewing this ruling, the court said they did not know how otherwise the alleged imbecility of mind could be proved, than by the evidence of those who grew up with him, who marked his conduct in infancy, in the prime of life and in his decline. The opinion of witnesses, they said, without stating the grounds of such opinion, ought not to be received. But when they state facts indicative of want of common intellect their opinion is always received. In *Wogan* v. *Small* (11 *Serg. & Rawle*, 141), on the trial of an issue of *devisavit*

*vel non*, the plaintiff was allowed to ask a witness sworn in his behalf whether from his actual knowledge of Peter Eipe, the supposed testator, he considered him fit or unfit to make a will, and a motion for a new trial for an alleged error in that respect was denied.

The same view has been taken of the question in Connecticut. An action on a promissory note was defended on the ground of the insanity of the defendant. On the trial the court rejected the mere opinions of witnesses, but permitted them to state their opinions in connection with the facts on which such opinions were founded, that there was a continued and uninterrupted lunacy and total want of understanding of the defendant, commencing at a time prior to and continuous at and after the execution of the note. The opinion of the court upon the exceptions was given by Chief Justice HOSMER, who declared that the judge at the trial " discriminated soundly and legally," and that the holding was sanctioned by the usual practice of courts in such cases. (*Grant* v. *Thompson*, 4 *Conn.*, 203.) In the subsequent case of *Kinne* v. *Kinne* (9 *id.*, 102), similar testimony was received, upon which the court remarked that upon the facts stated in support of the opinions, the triers would draw the inference as to the state of the testator's mind.

In Indiana the rule is stated to be that the opinions of unprofessional witnesses may be taken as to the sanity of a testator or grantor, but the facts upon which the opinions are founded must also be stated. ( *Doe* v. *Reagan*, 5 *Blackf.*, 217.)

In Tennessee, North Carolina and Ohio, the point has been settled the same way as in Pennsylvania, Connecticut and Indiana. ( *Gibson* v. *Gibson*, 9 *Yerger*, 329 ; *Clary* v. *Clary*, 2 *Iredell's Law Rep.*, 78 ; *The State* v. *Clark*, 12 *Ohio*, 483.)

In Vermont it is stated by the court, in two cases which I have examined, that upon questions of insanity, witnesses not professional men may be permitted to give their opinion in

connection with the facts observed by them; but in neither of the cases was the question material to the judgment which was given. (*Lester* v. *Pittsford*, 7 *Verm.*, 158; *Morse* v. *Crawford*, 17 *id.*, 499.)

In the circuit court of the United States, sitting in New Jersey, it was held on the trial of an issue of *devisavit vel non* that a witness might be asked what opinion he had formed of the sanity of the testator at or about the time of the will being made. (*Harrison* v. *Rowan*, 3 *Wash. C. C. R.*, 580.) It is presumed that the witness was acquainted with the testator, though the fact is not distinctly stated.

It is more doubtful how this precise question would be decided in the courts of Massachusetts. In *Needham* v. *Ide* (5 *Pick.*, 510), an instruction to the jury in a probate case, by MORTON, J., to the effect that the attesting witnesses might lawfully give their opinions as to the testator's sanity, " but that *mere opinions* of other witnesses were not competent evidence and were not entitled to any weight further than they were supported by the facts and circumstances proved on the trial," was approved by the supreme judicial court. (*Dickinson* v. *Barber*, 9 *Mass.*, 225; *Poole* v. *Richardson*, 3 *id.*, 330.) The preponderance of authority in this country is without doubt largely in favor of the admission of the evidence in question; and considering the case exceptional in its character we are of opinion that it was correctly received. If a rule could be framed which should confine the evidence of opinions in this class of cases to witnesses who were well informed, judicious and discriminating, and whose opportunities of observing the mental operations of the individual whose competency was in question were ample, and who were moreover free from bias, no one would seriously object to the doctrine admitting it to be given. But a rule so limited would be obviously impracticable from the number of collateral issues which it would involve. There are, however, certain qualifications which are indispensible. In the first place the witness whose opinion is

received should be one acquainted with the person of whom he is to speak, and should have heard him converse and have observed his conduct generally or in respect to some particular transaction, and the opinions should be such as the witness has formed from his own observation and not from information otherwise derived; and in the next place, if his opinion is unfavorable to the competency of the party, he should relate so far as he is able the facts upon which it is based. With these necessary limitations we think such evidence should be received, and that its weight may be safely left to the discretion of the jury.

There is no ground for saying that opinions not grounded upon facts were admitted in this case. Both the witnesses whose opinions were objected to were well acquainted with the grantor, and related facts more or less cogent bearing upon the opinions which they gave.

There was no error in receiving evidence of the declarations of Mrs. Dewitt, made in the presence and hearing of ner husband, imputing to him a total want of recollection, to which he made no reply. The hearing of and not denying such allegations was a feature in the conduct of the grantee very proper for the consideration of the jury.

The conveyance was executed in June, 1849; and a witness was allowed to speak of conversations had with him in the following April, and to answer the question whether he was then capable of managing his affairs. This was correct; for though the point in controversy was his capacity when the deed was made, the evidence tended to strengthen to some extent the conclusion that he was incompetent at the prior period. (*Freeman* v. *The People*, 4 *Denio*, 9, 40.)

The motion for a nonsuit was properly overruled. It had been proved that Mr. Dewitt appeared to be without memory or judgment; and although the witnesses may have over-stated the case against him, there was enough in my opinion to carry the question to the jury. No exception was taken to the instructions which were ultimately given

to the jury, and the question whether their verdict was supported by the whole testimony is not before the court. The judgment must be affirmed.

WILLARD and MORSE, Js., also read dissenting opinions.

Judgment reversed.