MARTIN J. SCULLY, Appellant, *v.* GUY K. HEBERT, Respondent.

Third Department, November 10, 1948.

*Hughes & Loucks* for appellant.

*Borst & Smith* for respondent.

Russell, J. This is an appeal by the plaintiff from a judgment of the Supreme Court of Schenectady County entered in the office of the Clerk of the County of Schenectady on the 16th day of December, 1947, in favor of the defendant and against the plaintiff of no cause of action founded upon a jury verdict, and also from an order denying a motion made in behalf of the plaintiff to set aside the jury verdict and for a new trial.

This action arose out of an automobile collision which occurred on the evening of April 24, 1944, shortly prior to a practice blackout. The plaintiff was a patrolman on the police force in the city of Schenectady. On the evening in question while acting in the course of his duties as a police officer, he was riding as a passenger in an automobile known as radio patrol car no. 2, owned by the City of Schenectady, and being operated by patrolman Miller. The police car was equipped with a radio, including both a transmitter and receiver, and also a siren and a red swivel light.

At 8:03 P.M. the police dispatcher at police headquarters received the first message with respect to a blackout. This first signal was known as a yellow signal. Upon receipt of this information the dispatcher notified all police cars by radio and received an acknowledgment from the police car in which the plaintiff was riding. It then became the duty of the officers in the police cars to proceed to turn off traffic lights in the zone where they were assigned when the blue signal was given.

The plaintiff and the officer operating the car proceeded southerly on Broadway and intended to go to the end of the city line on Broadway and come back in the northerly direction and turn off the traffic lights as they worked back. The boxes that control these lights on Broadway were on the east side of the street. Approximately twenty minutes had elapsed since

they received the yellow signal and no lights had yet been extinguished by them. As the police car approached Cedar Street, which intercepts Broadway, a collision took place between the police car and the defendant's car on the west side of Broadway. The defendant was proceeding in a northerly direction on Broadway and had turned across Broadway to the west side where his car came either to a stop or almost a stop because of pedestrians who were coming from a theatre and who were crossing the street. At this time the police car was approaching Cedar Street with its siren sounding and its red swivel light operating, which the defendant claims he neither heard nor saw. It is undisputed that the police patrol car was on its right side of the street where it was proceeding and the defendant on the left side. As a result of the collision the plaintiff was badly injured and lost the sight of one eye.

The exact time of the accident raises one of the principal factual issues in the case, because the yellow signal was followed by a blue signal at 8:23 P. M. However, the fact, that all street lights were on at the time, all houses lighted, automobiles proceeding with lights, and the fact that the officers in the patrol car had not yet received the blue signal, is almost conclusive that the accident happened at a time after the sending of the yellow signal and before the sending of the blue.

The question to be determined on this appeal is whether or not an air-raid warden is relieved from liability or injury to a person or damage to property as a result of his activity during a period of time between the yellow signal and the blue signal.

The Army Air-Raid Regulations, known as '' Air Raid Protection Regulations No. 1 of the Eastern Defense Command '', were adopted by New York State.

Section 40 of the New York State War Emergency Act (L. 1942, ch. 445 as amd.) reads as follows: '' Neither the state nor any municipality thereof, nor their agencies, agents or representatives, nor any member of a municipal or voluntary agency, nor any individual, partnership, corporation, association, trustee, receiver or any of the agents thereof, in good faith carrying out, complying with or attempting to comply with any law or duly promulgated rule, regulation or order as defined in subdivision eleven of section two of this act or any federal law or any order issued by federal or state military authorities relating to civilian protection, shall be liable for any injury or death to persons or damage to property as the result of such activity.''

In view of this section it is necessary to examine the wording of defendant's Exhibit " B " with which regulations the defendant evidently was acquainted, but which said regulations had been repealed over eleven months prior to the accident. Exhibit " B " reads as follows: " Yellow. There is no change. Alerting of wardens will be done as heretofore."

The evidence reveals that the defendant was not familiar with the regulations in effect at the time of the accident. The excuse given was that he had not received any pamphlets. The facts also show that he had not attended any meetings and therefore was not acquainted with the regulations in force, namely, plaintiff's Exhibit " 13 ", which for the purpose of this case reads as follows:

" 18. Yellow Signal. This is a confidential preliminary caution signal not to be given by audible public alarm. It indicates the POSSIBILITY of an air raid in the warning district so warned. This signal shall be transmitted by civilian defense authorities only to such key persons, essential industries, railroads, and places within such warning district as such authorities deem essential to initiate proper steps to insure timely blackout or air raid precautions."

" 19. Mobilization And Blackout (Blue) Signal. This is an audible warning signal indicating the PROBABILITY of an air raid in the warning district so warned. This signal will be a long note (approximately two minutes) at steady pitch of sirens, horns, or whistles. Upon the sounding of this signal, within such warning district, civilian defense forces will mobilize or remain mobilized; if during hours of darkness, lighting will be extinguished or obscured except as permitted by paragraphs 24 to 37, inclusive, and pedestrians and traffic may continue or resume movement."

It is plain from a reading of the directions as to yellow in defendant's Exhibit " B " and also from the directions under the yellow signal in plaintiff's Exhibit " 13 " that civil defense authorities were merely to be alert, but there is no specific direction to command activity or to mobilize as under the blue signal.

Air Raid Protection Regulations No. 1 of the Eastern Defense Command states under yellow signal that " the main body of Civilian Defense authorities should not be mobilized on the Yellow signal, but should be called to duty only on the Blue signal. To do otherwise would raise these objections:

" (a) The Yellow signal may be followed by a White or All Clear making mobilization of the main body of Civilian Defense authorities unnecessary. * * *

" (d) If the main body of Civilian Defense forces were mobilized on the Yellow signal and such signal were not followed by a Blue or Red signal, there would be no way to demobilize wardens since the All Clear in such cases would not be publicly announced or sounded."

In view of the facts and the regulations herein stated, the court submitted the following question to the jury: " Was the defendant Hebert operating his automobile at the time of the collision as an air raid warden in good faith, carrying out, complying with or attempting to comply with any law or duly promulgated rule, regulation or order as defined by the New York State War Emergency Act or any federal law or any order issued by federal or state military authorities relating to civilian protection?"

The court then said in substance to the jury, if you answer that question " yes ", you need not consider anything else. But if you answer the question " no " that he was not in good faith carrying out or attempting to comply with the rules and regulations of an air-raid warden, then you may go on and consider other elements of this case, meaning the negligence of the respective parties.

At the time the yellow signal was given the defendant received a telephone call that there was to be a blackout. He then changed his clothes and proceeded to go to his superior's house on Cedar Street. With respect to these facts the court charged the jury that the yellow signal had been given. Without explaining the meaning of the yellow signal and the blue signal the court thereby created the impression in the minds of the jury that the defendant had started his activity as a warden. This impression in the minds of the jury without a thorough understanding as to the rights of a warden under the yellow and blue signals created an unfavorable impression against the plaintiff. It was the duty of the court to thoroughly explain the meaning of the yellow and blue signals.

The court was also requested to charge the jury that Air Raid Protection Regulations No. 1 of the Eastern Defense Command have the effect of Federal law, or had the effect of Federal law in the County of Schenectady on the 24th of April, 1944.

To this request the court stated " That may be so, but as I say, there is no evidence that he ever had a copy or saw a copy. The chief air raid warden said he had never seen it before. You are to take all those things into consideration, whether they are the laws or not, whether or not this defendant acted in good faith, whether he knew those rules and regulations were in existence    *    *    *." This statement of the court must have created

in the minds of the jury a shield of protection over the defendant on account of his lack of knowledge of the rules and regulations.

The court then explained to the jury the meaning of good faith, which words are used in section 40 of the New York State War Emergency Act. A warden might act in good faith from the moment he receives an alert message, but his acts do not receive immunity until they are performed within the realm of immunity granted by the rules and regulations. It is plain that this immunity arises under the blue signal, when the blackout takes place and consequently danger arises not only from the acts of pedestrians and automobilists, but also from the very acts of the warden. At the time of this accident the lighted condition of the streets and the use of the same by pedestrians and operators of cars exacted of the defendant the exercise of reasonable care and obedience to the traffic laws to the same degree as of any person on the streets. The degree of reasonable care required was a question of fact for the jury.

We have concluded from an examination of the case that the law and the facts were not made sufficiently clear to the jury for a fair and just deliberation.

The judgment and order appealed from should be reversed on the law and facts and a new trial granted, with costs and disbursements to the plaintiff.

HILL, P. J., HEFFERNAN, FOSTER and DEYO, JJ., concur

Judgment and order reversed, on the law and facts, and a new trial granted, with costs and disbursements to plaintiff-appellant.