THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ISIDOR SHIFRIN, Appellant.

County Court, Nassau County, June 30, 1950.

*Frank A. Gulotta, District Attorney (Henry P. DeVine* of counsel), for respondent.

*Samuel Safronoff* for appellant.

CHRIST, J. This is an appeal from a judgment of the District Court of Nassau County sitting as a court of special sessions, convicting defendant-appellant of violating section 2147 of the Penal Law of the State of New York.

The facts agreed upon by stipulation in open court below are simple. The appellant and his two brothers maintain and operate at Bellmore, Nassau County, a combination feed and hardware business under the name of Bellmore Feed Store. Bellmore, where the business is located, is an unincorporated community, not in any village or city, and it has a population of less than forty thousand people. The business is exactly what its name implies, a general feed store; 95% of the sales are animal and poultry feed, the remaining 5% of the sales are vegetable plants, flowers, bulbs, lawn seed and garden supplies.

The defendant had been warned against doing business on Sunday nevertheless, on Sunday morning, May 14, 1950, he was in charge and opened the store for business, displaying and offering for sale its complete contents. At 9:50 A.M. on that day he sold a bag of pigeon feed to one Charles Geyen for the sum of $4.25. The feed sold was a mixture of corn, wheat, peas and vetch and was not for human consumption. Thereafter, the defendant kept the store open and continued to sell to the general public. Farmers are his principal customers. The stipulation recites that " defendant is one of three brothers who own as co-partners a farmers' market " where the alleged violation took place.

Section 2147 of the Penal Law is the law of this State against public selling on Sundays. That section entitled " *Public Traffic*

*on Sunday* '' prohibits all manner of public selling, or offering for sale of any property upon Sunday except as follows:

'' 1. Articles of food may be sold, served, supplied and delivered at any time before ten o'clock in the morning;

'' 2. Meals may be sold to be eaten on the premises where sold at any time of the day;

'' 3. Caterers may serve meals to their patrons at any time of the day;

'' 4. Prepared tobacco, bread, milk, eggs, ice, soda-water, fruit, flowers, confectionery, souvenirs, newspapers, gasoline, oil, tires, drugs, medicines and surgical instruments, may be sold in places other than a room where spirituous or malt liquors or wines are kept or offered for sale and may be delivered at any time of the day.

'' 5. Delicatessen dealers and bakeries may sell, supply, serve and deliver cooked and prepared foods, between the hours of four o'clock in the afternoon and half past seven o'clock in the evening, in addition to the time provided for in subdivision one hereof, and, elsewhere than in cities and villages having a population of forty thousand or more, delicatessen dealers, bakeries and farmers' markets or roadside stands selling fresh vegetables and other farm produce, and fishing tackle and bait stores may sell, supply, serve and deliver merchandise usually sold by them, at any time of the day.''

The defendant was convicted of a violation of the foregoing section but claims his act of selling and offering for sale was specifically permitted by the exceptions in subdivisions 1 and 5. He contends that pigeon feed is food within the meaning of subdivision 1 and that the business was a farmers' market within the meaning of subdivision 5.

Food is a word of at least two meanings. It may mean nourishment for all living things, plant and animal, or it may mean material normally eaten by human beings. It is in the narrower sense that the word food is used in section 2147. We take this to be so from the context in which the word is set. A reading of the section shows that the articles of food stuffs referred to, which are permitted for sale on Sunday, are only items used for human consumption and that the places where food may be sold are those places where food for man is sold or served. There is no mention whatsoever of provender for birds or beasts. Had food in the broader sense been intended by the Legislature, items of nourishment for domestic animals such as feed, fodder, grain and hay would have been incorporated into the statute.

Food and feed are distinct nouns and have clear separate meanings and usages in our vernacular. Examine the classified telephone directories of any community and the distinction is found in the listing of food stores and feed stores. Food stores are those places where materials for human consumption are sold; feed stores are places where materials for consumption by domestic animals and animal pets are sold. This usage is also found in trade journals, market reports, newspapers and directories where items of food and items of feed are under separate designations. Here, this distinction is found in the very title of the appellant's business, Bellmore Feed Store, is the name used to attract keepers of animals. The distinction is shown as well in the name of the material sold, pigeon feed. This distinction between food and feed has also been recognized by the courts. In *United States* v. *One Car Load of Corno Horse & Mule Feed* (188 F. 453) the court in discussing the residue of particular grains or vegetables left after subtracting certain particles which are useful for human food, said at page 457: " The whole trend of the evidence is that in nearly all by-products the word ' feed,' when connected with a grain, is used to denote the by-product from that grain, meaning the residue of the grain after it is manufactured into food for human consumption, and that, when it is intended to designate the whole grain or the crushed grain entering into articles of food for man, the thing is spoken of as ' food ' and not ' feed.' "

In *Botelor* v. *Washington* (Fed. Cas. No. 1685) the court held that a statute making it unlawful to buy up any " provision or article of food coming to \* \* \* market " means article of food for human consumption and does not refer to rye-chop suitable for horses. (See, also, *Harkey* v. *State,* 90 Tex. Cr. Rep. 212, 217.)

In view of the foregoing, it is this court's opinion that section 2147 of the Penal Law is limited to such food as is consumed by human beings and that to hold otherwise would be in violation of the purposes and intent of the statute.

The defendant's contention that the place of business is a farmers' market and therefore exempt from the prohibitions of the statute has no persuasive force. Chapter 735 of the Laws of 1950, effective April 17, 1950, broadened Sunday selling in this State and the following pertinent words were added to describe businesses excepted from the act, " delicatessen dealers, bakeries and farmers' markets or roadside stands selling fresh vegetables and other farm produce, and fishing tackle and bait stores ". The use of the word " or " between " farm-

ers' markets '' and '' roadside stands '' is significant. Although the conjunctive '' and '' is used elsewhere, the disjunctive '' or '' links to '' farmers' markets '' the qualifying material which follows '' roadside stands '', that is '' selling fresh vegetables and other farm produce ''. Thus, farmers' markets which sell fresh vegetables and other farm produce are to be included within the exceptions against Sunday selling. The commonly accepted understanding of a farmers' market is not a place operated by one or two individuals for the sale of the stores in their business that they have purchased from distant places to supply to general public which may include farmers as well, but rather a place where farmers come to bring their produce to sell to the general public.

The fact that the stipulation recites that the Bellmore Feed Store is a farmers' market does not make it so. It is the type of business conducted which governs and the stipulation cannot change the fact or the law; neither can the parties by stipulation make ineffective the operation of the statute where in fact a violation exists. (*Fougara & Co.* v. *City of New York,* 224 N. Y. 269, 279.) The judgment of conviction is affirmed.