THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JACK SHIFRIN, Appellant.

County Court, Nassau County, October 27, 1954.

*Samuel Safronoff* for appellant.

*Frank A. Gulotta, District Attorney (Henry P. De Vine* of counsel), for respondent.

LENT, J. This is an appeal from a judgment of conviction entered upon the verdict of a District Court jury which found the defendant guilty of violating section 2147 of the Penal Law which prohibits, with certain exceptions, the public sale or offer to sell of any merchandise or property on Sunday. Defendant, a copartner in a concern known as Bellmore Feed Company, is alleged to have made a Sunday sale of a gallon of turpentine, a pound of putty and a garden rake at defendant's place of business in Bellmore, this county.

The defendant admitted upon the trial that he had sold the merchandise in question at the time and place alleged in the information but contended, as he does here, that he was then and there conducting a farmers' market and hence came within the purview of the exception to such statute set forth in subdivision 5 which reads in pertinent part as follows: " Grocers, delicatessen dealers and bakeries may sell, supply, serve and deliver cooked and prepared foods, between the hours of four o'clock in the afternoon and half-past seven o'clock in the evening, in addition to the time provided for in subdivision one hereof, and, elsewhere than in cities and villages having a population of forty thousand or more, delicatessen dealers, bakeries and farmers' markets or roadside stands selling fresh vegetables and other farm produce, and fishing tackle and bait stores may sell, supply, serve and deliver merchandise usually sold by them, at any time of the day."

The trial below consumed three days and it is apparent from a reading of the record that both the prosecution and the defense were in agreement that if the defendant's business was a farmers' market, he was exonerated from the condemnatory provisions of the statute, whereas if he were merely conducting a hardware and feed store he was not.

To determine this question the trial court not only received proper testimony as to the contents of defendant's store, but over defendant's objection permitted a police officer to express an opinion about the type of business being conducted by the defendant. This testimony defendant sought to rebut by similar testimony. So-called " expert " testimony was also received from both sides wherein a defendant's witness was permitted to express an opinion on the type of business actually being conducted on the premises, and the People were permitted to offer testimony of witnesses who were called solely for the purpose of qualifying as expert witnesses and then defining the meaning of " farmers' market ". The court in its charge referred to such testimony and advised the jury in substance

that predicated thereon, it should decide whether the defendant was operating a farmers' market within the meaning of the exception to the statute quoted above.

The testimony of the lay witness as to the type of business conducted by defendant was improperly received after objection had been raised. Such witness could testify only to facts and not to his opinions and conclusions drawn from the facts for it is the sole province of the jury to draw their own inference therefrom (*Morehouse* v. *Mathews,* 2 N. Y. 514; *De Witt* v. *Barley,* 9 N. Y. 371; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187).

While it might be contended that proper objection should have been made by the defendant to the offer of so-called expert testimony seeking to define the meaning of " farmers' market " before he could rely thereon for a claim of reversible error, it cannot be denied that its reception considered in the light of the Judge's charge shaped the whole format of the trial. Obviously, it should have been objected to. The ground for the admission of expert opinion evidence stems from the necessity to assist the jury in determining questions of fact. There are two classes of cases in which such experts may testify. The first class involves a situation where the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge and which are peculiarly within the knowledge of authorities on the subject in which event experts can only give the facts while the jury must draw the conclusions. In the other class are those cases in which the conclusions to be drawn from facts stated, as well as knowledge of the facts themselves, depend upon the knowledge of men with peculiar talents or skill not within the range of ordinary training or intelligence (*Dougherty* v. *Milliken,* 163 N. Y. 527). Under such circumstances, experts may give both the facts and their conclusions therefrom in the form of an opinion which the jury may adopt or reject.

In this case, however, such testimony could and perhaps should have been excluded on the trial court's own initiative for its admission plotted the whole course of the trial to the point where it eventually left to the jury, in its reliance thereon, not only the applicability but the construction of the statute. This was error (*Ierardi* v. *Reisberg & Reiner,* 244 App. Div. 822; *Andross* v. *Trustees of Columbia Univ.,* 260 App. Div. 941; *Winchell* v. *Town of Camillus,* 109 App. Div. 341, affd. 190 N. Y. 536).

That the court was lured into this position by statements of both counsel expressing apparent acquiescence and virtual

agreement in the wisdom of this theory in order to test what they conceded to be the sole issue in the case, is understandable but unfortunate. It does not cure the vice of actually leaving to the jury the determination of a question of law, namely, '' What did this legislature intend by the term ' farmers' market' as contained in the statute? ''

Section 420 of the Code of Criminal Procedure provides that the court must charge all matters of law which it thinks necessary for the jury's information in giving their verdict. This contemplates a definition of statutory language where such language may be capable of different construction. The definition or explanation by the court to the jury of particular words and phrases has always been recognized and followed by the court where such definition and .explanation are necessary for a proper determination of the subject matter (*Scully* v. *Hebert,* 274 App. Div. 381; *Horton* v. *New York Central R. R. Co.,* 202 App. Div. 428).

We are well aware of the fact that many so-called '' farmers' markets '' bear but a faint resemblance to the traditional mart where farmers offered for sale the product of their labors. In our more urban areas the name '' farmers' market '' on a sign sometimes seeks to describe a giant emporium dispensing pastrami, television sets and baby carriages but nary a head of lettuce. Did the Legislature recognize these newly-born creatures as being encompassed within the definition; did it mean to apply to the term the more restrictive definition given by our former colleague in *People* v. *Shifrin* (198 Misc. 348, 352, revd. on other grounds 301·N. Y. 445), or does the statutory language embrace only those places which actually sell fresh vegetables and other farm products?

We are not called upon to give an answer here since, within the limitations of the Judge's charge in the court below, barren as it is of any definition, the question is not before us. However difficult it may have been to lay down such a definition, such was the clear duty of the court below. The court having defined '' farmers' market '' within the contemplation of the statute as a matter of law, it would then be for the jury to say whether in the light of the testimony adduced respecting the store's contents, it was a '' farmers' market '' within the definition given by the court and to adjudge the defendant's guilt or innocence by this yardstick.

Judgment of conviction reversed, fine remitted and new trial ordered.